COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | |
| | § | 08-11-00089-CV |
| IN RE ELAMEX, S.A. DE C.V., | § | AN ORIGINAL PROCEEDING IN |
| ELAMEX USA, CORP., AND | | |
| MOUNT FRANKLIN FOODS, L.L.C., | § | MANDAMUS |
| | § | |
| | § | |

## **O P I N I O N**

In this original proceeding, Relators seek to compel Respondent to vacate an order denying their motion to sever and an order denying their motion to dismiss on *forum non conveniens* grounds. For the reasons stated below, we deny Relators' petition for writ of mandamus.

### **FACTUAL AND PROCEDURAL BACKGROUND**

This case centers on a dispute among entities and individuals involved in the candy business.

#### *The Parties*

The two Plaintiffs in the underlying suit are Real-Parties-in-Interest in this mandamus action. One of the Plaintiffs is Dulces Arbor, S. de R.L. de C.V. ("Dulces Arbor"), a Mexican corporation. The other is Blueberry Sales, LLP ("Blueberry Sales"), a Delaware limited liability partnership that has its principal place of business in El Paso.[1] Blueberry Sales is the American counterpart to Dulces Arbor.[2]

---

[1] Dulces Arbor and Blueberry Sales are also Third-Party Defendants in the underlying suit.

[2] In the underlying suit, Raymond Ducorsky and Brad Ducorsky are Third-Party Defendants, as well as Third-Party

There are seven Defendants in the underlying lawsuit, but only three of them are Relators in this mandamus action. Relators are Elamex, S.A. de C.V. ("Elamex Mexico"), Elamex USA, Corp. ("Elamex USA"), and Mount Franklin Foods, LLC ("MFF"). Elamex Mexico is a Mexican corporation doing business in Texas. Elamex USA is a Delaware corporation doing business in Texas. MFF is a Texas limited liability company. These three entities are interrelated – Elamex Mexico owns Elamex USA, which in turn owns MFF – and all operate from or have offices in El Paso, Texas.

The other Defendants in the underlying suit are Sunrise Candy, LLC ("Sunrise Candy"), Casas Grandes Confections, LLC ("Casas Grandes"), Robert J. Whetten ("Whetten"), and David Stewart ("Stewart"). Sunrise Candy is a Nevada limited liability company doing business in Texas. Casas Grandes is also a Nevada limited liability company doing business in Texas. Like Relators, these entities have offices in El Paso. Whetten is a resident of El Paso, who at various times was an executive or board member for Casas Grandes, Elamex USA, Elamex Mexico, and MFF as well as some other entities. Like Whetten, Stewart is a resident of El Paso, who at various times was also an executive for Elamex Mexico, Sunrise Candy, and MFF.

### The Mexican Real Property

At the heart of the dispute between Plaintiffs and Defendants is a building located in Cuidad Juarez, Mexico ("the Mexican real property") used to manufacture candy. Throughout the litigation, Dulces Arbor has maintained that it owns the Mexican real property, which it expanded with financing provided by several lenders, including Bank of the West.[3] Dulces Arbor

---

Plaintiffs and Cross-Claimants, whereas Mark Ducorsky is only a Third-Party Defendant. None of the Ducorskys are a party in this mandamus action.
[3] Bank of the West is now WestStar Bank.

attempted to sell the Mexican real property to several entities affiliated with the Defendants, but negotiations broke down between Dulces Arbor and Whetten and Stewart and the sale was never consummated.[4] The parties disagree about who is to blame for the failure to reach an agreement. In any event, Dulces Arbor's assertion that it owned the Mexican real property remained unchallenged until early last year when Relators claimed in their motion to dismiss for lack of subject matter jurisdiction that Dulces Arbor had transferred ownership of the Mexican real property into a trust for the benefit of the lenders, including Bank of the West.

### *The Personal Property*

Another dispute between Plaintiffs and Defendants concerns machinery and computers ("the personal property") originally leased by Blueberry Sales from C Leasing Company, a subsidiary of Bank of the West. Except for one computer that remained in El Paso but was nonetheless part of the manufacturing process, the personal property was installed on the Mexican real property. Blueberry Sales eventually purchased the personal property.

### *The Leases*

Several leases concerning the occupancy and use of the Mexican real property play a large role in this dispute as well. Originally, Dulces Arbor leased the Mexican real property to Blueberry Sales. However, that changed when Blueberry Sales and another entity named Dulces Blueberry, S.A. de C.V. ("Dulces Blueberry") combined assets with another entity to create Simply Goodies, LLP ("Simply Goodies").[5] Following this combination, Dulces Arbor leased the Mexican real property to Dulces Blueberry. Simply Goodies acted as guarantor of this lease.

---

[4] Whetten referred the Ducorskys to an attorney in El Paso named Hector Delgado to represent Dulces Arbor in the negotiations. The Ducorskys were apparently unaware that Delgado was representing the other entities involved in the transaction.

[5] Bridge Healthcare Finance, LLC, and Bridge Opportunity Finance, LLC (collectively "Bridge") provided financing for this transaction.

Although the mandamus record is unclear as to what exactly occurred, MFF's maquiladora counterpart, Confecciones de Juarez, S.A. de C.V. ("Confecciones de Juarez"), currently has a submaquila agreement with Dulces Blueberry to use the Mexican real property.

### *The Lawsuit*

At the time of this mandamus action, Plaintiffs' live pleading was their sixth amended petition. Plaintiffs sued Defendants for fraud, tortious interference, breach of contract, breach of contract under an alter ego theory, unjust enrichment, and conspiracy.

Plaintiffs allege that Defendants committed several types of fraud. First, Plaintiffs claim that Whetten and Relators indicated that they wanted to purchase the Mexican real property when they actually had no intention of doing so. Thus, Plaintiffs assert that by inducing them to undertake negotiations for the sale of the Mexican real property, Whetten and Relators caused them to forebear from taking actions to protect the Mexican real property and the personal property. Second, Plaintiffs claim that Relators used Delgado to acquire information from them and then used that information against them, and that Relators referred Delgado to Plaintiffs without disclosing that he would act adversely to Plaintiffs' interests. Third, Plaintiffs claim that Defendants fraudulently "cheated" them out of "the rent payments, other Lease obligations, and other rights that Dulces Arbor is entitled to under the contract with Dulces Blueberry and Simply Goodies."

As for their conversion claim, Plaintiffs assert that Relators, both on their own and through other entities, exercised "unlawful dominion and control" over the personal property and thus deprived them of the use, enjoyment, dominion, and control over the personal property. Plaintiffs have two tortious interference claims. First, Plaintiffs allege that Defendants caused Bridge not to

4

consummate the letter of credit.   Second, Plaintiffs assert that Relators and others prevented Dulces Blueberry from performing its obligations under its lease with Dulces Arbor.

Plaintiffs contend that Relators breached a contract with Dulces Arbor in which they agreed to reimburse Dulces Arbor for $25,000 in attorney's fees that Dulces Arbor incurred in pursuing the sale of the Mexican real property.

As for their breach of contract claim under the theory of alter ego, Plaintiffs assert that Simply Goodies breached its guaranty agreement with Dulces Arbor, and the corporate veil of Elamex Mexico should be pierced to render it liable for the breach.

As to their claim for unjust enrichment, Plaintiffs allege that Defendants did not compensate Dulces Arbor for the use of the Mexican real property to produce candy, which was sold without further compensation to Dulces Arbor.   Finally, Plaintiffs claim that Defendants, along with others, conspired to commit the torts described above.

## MANDAMUS

To obtain mandamus relief from the order denying its motion to dismiss for lack of subject matter jurisdiction, Relators must meet two requirements.   Relators must show that the trial court clearly abused its discretion and that they have no adequate remedy by appeal.   *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004)(orig. proceeding).

A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law.   *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005)(orig. proceeding).   When reviewing the trial court's decision for an abuse of discretion, we may not substitute our judgment for that of the trial court with respect to resolution of factual issues or matters committed to the trial court's discretion.   *See Walker v. Packer*, 827

5

S.W.2d 833, 839 (Tex. 1992); *see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). However, we are much less deferential when reviewing the trial court's determination of the legal principles controlling its ruling. *See Walker*, 827 S.W.2d at 840. A trial court has no discretion in determining what the law is or applying the law to the facts, even when the law is unsettled. *Prudential*, 148 S.W.3d at 135. A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Walker*, 827 S.W.2d at 840.

Absent extraordinary circumstances, mandamus will not issue unless the relator lacks an adequate remedy by appeal. *In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 210-11 (Tex. 2004)(orig. proceeding). Whether a clear abuse of discretion can be adequately remedied by appeal depends on a careful analysis of costs and benefits of interlocutory review. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008)(orig. proceeding). Because it depends heavily on circumstances, such a cost-benefit analysis must be guided by principles rather than by simple rules that treat cases as categories. *See id.* In addition, we must consider whether mandamus will spare the litigants and the public "the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008)(orig. proceeding), *quoting Prudential*, 148 S.W.3d at 136.

**MOTION TO SEVER**

Relators argue that the trial court abused its discretion in denying their motion to sever Dulces Arbor's claims related to the Mexican real property from Blueberry Sales's claims related to the personal property because the claims are separate and distinct and not so interwoven that they involve the same facts and issues. Relators further contend that that their remedy by appeal

6

is inadequate because this Court would not be able to cure the trial court's denial of the motion to sever since once the matter has been tried, the issue of proper forum for the Mexican property issues cannot be corrected by an appeal.   Because we conclude that Relators have not shown that the trial court abused its discretion in denying their motion to sever, we do not reach the issue of whether Relators have an adequate remedy by appeal.

### *Standard of Review*

The severance of claims rests within the sound discretion of the trial court and is a question of law.   *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658-59 (Tex. 1990). When considering whether to grant a severance motion, the trial court must generally accept the plaintiff's pleadings as true and then determine whether severance is appropriate.   *In re Liu*, 290 S.W.3d 515, 520 (Tex.App.--Texarkana 2009, orig. proceeding).   If the trial court's decision to grant or deny a party's severance motion falls within the wide zone of reasonable agreement, the appellate court reviewing that decision within the context of a mandamus proceeding should not conclude the lower court abused its discretion.   *Id.* at 520.   Given that the trial court must generally accept the plaintiff's pleadings as true, the only dispute concerns the legal consequences stemming from those accepted-as-pleaded facts.   *Id*.

### *Applicable Law*

The controlling reasons for severance are to avoid prejudice, do justice, and increase convenience.   *F.F.P. Oper. Partners L.P. v. Duenez*, 237 S.W.3d 680, 693 (Tex. 2007). Severance is proper if three factors exist:   (1) the controversy involves multiple causes of action, (2) the severed claim would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim must not be so interwoven with the remaining action that they involve the same facts

7

and issues.  *Guaranty Fed. Savings Bank. v. Horseshoe Oper. Co.*, 793 S.W.2d 652, 658 (Tex.

1990)*; see also* TEX.R.CIV.P. 41.

### *Discussion*

In this case, there is no dispute between Relators and Real-Parties-in-Interest that the first

two factors are satisfied.   The mandamus record supports this conclusion as well.

Real-Parties-in-Interest are suing multiple parties under varying causes of action. Some of the

claims sound in tort, others in contract.   The plaintiffs are two distinct entities and the defendants

include several companies and individuals.   Thus, we focus our analysis on the issue of

interrelatedness.[6]

As discussed above, Real-Parties-in-Interest alleged, in their sixth amended petition, that

Defendants and others conspired to defraud them of their rights relative to both the Mexican real

property and the personal property.   They also maintain this position on appeal.   With respect to

having a singular proceeding involving Blueberry Sales's conversion claim against Relators and

Dulces Arbor's tort and breach of contract claims against Relators, the trial court could have

reasonably concluded that a unitary proceeding against Relators was necessary given the unique

posture of this case.

For example, the trial court could have reasonably concluded that it was just not to sever

the case given the interrelatedness of the corporate defendants to each other and of the individual

defendants to the corporate defendants.   These relationships lend credence to

---

[6] Relators argue that the claims involving the Mexican real property do not involve the same facts and issues as the claims involving the personal property and that, although both Dulces Arbor and Blueberry Sales asserted causes of action for tortious interference, the contracts and relationships allegedly interfered with involve separate contracts or prospective contracts between separate entities.   On appeal, however, Relators only argue that the claims involving the Mexican real property do not involve the same facts and issues as the claims involving the personal property. Thus, we limit our discussion to this argument.

Real-Parties-in-Interest's theory that the defendants acted together to take over their candy manufacturing plant and used the equipment therein to produce candy. Similarly, the trial court could have reasonably concluded that it was more convenient for the parties to proceed in a single trial rather than in multiple trials because the facts are so interwoven and complicated. The trial court could have also concluded that trying the disputes in multiple suits and multiple forums would be redundant and a waste of the parties' and the judiciary's resources, since the two trials would consist of the same parties, witnesses, and evidence. Likewise, the trial court could have reasonably concluded that it would have been prejudicial to sever the case because a heightened possibility existed that two juries in two separate trials in two separate cases might arrive at two different and conflicting results. A single trial would eliminate the chance of differing outcomes.

Based on the factors outlined above, we hold that the trial court did not abuse its discretion in denying Relators' motion to sever.

## MOTION TO DISMISS BASED ON *FORUM NON CONVENIENS*

Relators next argue that the trial court abused its discretion in denying their motion to dismiss based on *forum non conveniens* when it determined that the general violence in Juarez prevented the city from being an adequate forum. Relators further contend that that their remedy by appeal is inadequate because it is well-settled that as a matter of law an appeal is inadequate when a trial court erroneously denies a motion to dismiss based on the common law doctrine of *forum non conveniens*. Because we conclude that Relators have not shown that the trial court abused its discretion in denying their motion, we do not reach the issue of whether Relators have an adequate remedy by appeal.

### *Standard of Review*

9

The determination of whether to grant or deny a motion to dismiss on the basis of the common law doctrine of *forum non conveniens* is committed to the sound discretion of the trial court. *Quixtar Inc. v. Signature Management Team, LLC*, 315 S.W.3d 28, 31 (Tex. 2010). The trial court's decision is entitled to great deference and may be reversed only when there has been a clear abuse of discretion. *Id*. at 31, 35.

### *Applicable Law*

*Forum non conveniens* is an equitable doctrine exercised by courts to prevent the imposition of an inconvenient jurisdiction on a litigant. *Exxon Corp. v. Choo*, 881 S.W.2d 301, 302 n.2 (Tex. 1994). A trial court will exercise the doctrine of *forum non conveniens* when it determines that, for the convenience of the litigants and witnesses and in the interest of justice, the action should be instituted in another forum. *See id*. at 302 n.2.

Because the common law doctrine of *forum non conveniens* presumes that at least two forums are available to a plaintiff, a trial court must first determine whether an alternative forum exists, inquiring whether another forum is "available" and "adequate." *Sarieddine v. Moussa*, 820 S.W.2d 837, 841 (Tex.App.--Dallas 1991, writ denied); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 265 n.22, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981). If an available and adequate alternative forum exists, a trial court must then determine which forum is best suited to the litigation by considering whether certain private and public interest factors weigh in favor of dismissal. *Sarieddine*, 820 S.W.2d at 840, *citing Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed.2d 1055 (1947); *Piper Aircraft Co.*, 454 U.S. at 265, 102 S.Ct. at 265.

### *Discussion*

To the exclusion of any other ground the trial court might have relied upon to deny their

10

motion, Relators argue that the general violence in Juarez was the "sole basis" for the trial court's denial of their motion. Yet, Relators fail to explain the basis for their conclusion that the violence in Juarez was the sole reason the trial court relied upon to deny their motion since the trial court neither issued written findings of fact and conclusions of law nor stated in its order the specific ground or grounds it relied upon to deny the motion.[7] When a trial court issues an adverse ruling without specifying its grounds for doing so, the appellant must challenge each independent ground asserted by the appellee that fully supports the adverse ruling since it is presumed that the trial court considered all of the asserted grounds. *U.S. Lawns, Inc. v. Castillo*, 347 S.W.3d 844, 847 (Tex.App.--Corpus Christi 2011, pet. filed); *Oliphant Financial L.L.C. v. Hill*, 310 S.W.3d 76, 77-8 (Tex.App.--El Paso 2010, pet. filed); *Fox v. Wardy*, 224 S.W.3d 300, 304 (Tex.App.--El Paso 2005, pet. denied). If the appellant fails to challenge all possible grounds, we must accept the validity of the unchallenged independent grounds and affirm the adverse ruling. *U.S. Lawns, Inc.*, 347 S.W.3d at 844; *Oliphant Financial L.L.C.*, 310 S.W.3d at 78; *Fox*, 224 S.W.3d at 304. Thus, any error in the grounds challenged on appeal is harmless because the unchallenged independent ground fully supports the adverse ruling. *Oliphant Financial L.L.C.*, 310 S.W.3d at 78.

Here, the trial court denied Relators' motion without specifying its reason or reasons for denying the motion. Because the trial court did not identify its reason or reasons for denying the motion, Relators bore the burden on appeal to attack each independent ground asserted in Real-Parties-in-Interest's response to Relators' motion that supported the trial court's ruling,

_____

[7] Although requested to do so by Relators, the trial court did not issue findings of fact and conclusions of law. However, on appeal Relators do not complain of the trial court's failure to issue findings of fact and conclusions of law. Indeed, Relators assert in their reply brief that "[a]lthough [they] requested findings of fact and conclusions of law, they were not absolutely entitled to have the trial court enter same" pursuant to Rule 296 of the Rules of Civil Procedure because the trial court issued an order, not a final judgment following a conventional trial on the merits. Because we have not been asked to determine whether the trial court should have issued findings of fact and conclusions of law in this case, we offer no opinion on this issue.

11

specifically whether the *Gulf Oil* private and public interest factors militated in favor of retaining the case in the trial court.   Relators failed to do so.

Instead, they focused on only one ground: the adequacy of Mexico as an alternative forum. Relators rely on the trial court's oral statements as the explanation of the trial court's reasoning, but cite no authority or offer any reasoned explanation why this is necessarily so.[8]   We do not

---

[8] Relators do cite *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844 (Tex. 1992)(orig. proceeding), and *In re Junell*, 2000 WL 764144 (Tex.App.--Amarillo June 13, 2000, no pet.) in support of their argument that, in the absence of written findings or specific recitals in the order, the trial court's oral statements regarding the violence in Juarez are sufficient for us to determine that this was the sole basis upon which the trial court relied to deny Relators' motion.   However, Relators first raise this argument in their reply brief.   Rule 38.3 of the Rules of Appellate Procedure precludes an appellant from raising an issue in a reply brief that was not included in the appellant's original brief.   TEX.R.APP.P. 38.3; *Fox v. City of El Paso*, 292 S.W.3d 247, 248-49 (Tex.App.--El Paso 2009, pet. denied).   An issue raised for the first time in a reply brief is waived and need not be considered by an appeals court.   *Fox*, 292 S.W.3d at 249; *Few v. Few*, 271 S.W.3d 341, 347 (Tex.App.--El Paso 2008, pet. denied); *Gray v. Woodville Health Care Center*, 225 S.W.3d 613, 620 (Tex.App.--El Paso 2006, pet. denied).   Accordingly, Relators have failed to preserve this argument for review.

Even had Relators preserved this argument for review, we are not persuaded that *Chrysler Corp.* and *In re Junell* compel us to conclude that we must accept oral statements from the bench as the trial court's basis for its ruling. In *Chrysler Corp.*, the Supreme Court recognized that in situations in which an abuse of discretion standard applies, trial court findings may aid an appellate court in determining whether the trial court exercised its discretion in a "reasonable and principled fashion," and thus encouraged their use.   841 S.W.2d at 852.   In explaining that findings in such situations were not mandatory, however, the Supreme Court explained:

> [W]e do not wish to unnecessarily burden our trial courts by requiring them to make written findings in all cases in which death penalty sanctions are imposed.   First, the benefit of the trial court's explanation in the record of why it believes death penalty sanctions are justified may be sufficient to guide the appellate court.

*Id.*   Thus, as is evident when viewed in the proper context, the Supreme Court was not mandating that in situations where findings are not required, but may be helpful, that an appellate court accept a trial court's oral explanation from the bench as the trial court's reasoning in the absence of written findings.   Rather, the Supreme Court was merely opining that in situations in which it would be unduly burdensome for a trial court to make formal findings when they are unnecessary, an oral explanation in the record *may* aid the appellate court in determining if the trial court abused its discretion.

*In re Junell* is a case in which the trial court granted a severance but did not specify the grounds in its written order and did not make any formal findings of fact or conclusions of law.   2000 WL 764144 at *3.   In concluding that the second and third prongs for severance had been met, the court of appeals relied upon the trial judge's comments from the bench.   *Id.* at *4.   Notwithstanding the fact that this opinion is unpublished and has no precedential value, we are not swayed by its outcome.   The court of appeals cited no authority or offered any reasoned explanation for its reliance on the trial court's oral comments.   More importantly, nowhere in its opinion does the court hold that that an appellate court must accept a trial court's oral explanation from the bench as the trial court's reasoning in the absence of written findings.

dispute that the trial court was reluctant to require the parties to litigate in Mexico in light of the unprecedented violence in Juarez. However, the trial court's oral statements, in and of themselves, are insufficient to determine the ground or grounds the trial court considered in denying Relators' motion. This is because oral comments from the bench cannot substitute for written findings of fact and conclusions of law and therefore do not limit the grounds upon which a ruling can be upheld. *See In re Doe 10*, 78 S.W.3d 338, 340 n.2 (Tex. 2002); *In Interest of W.E.R.*, 669 S.W.2d 716, 716 (Tex. 1984); *In re E.A.S.*, 123 S.W.3d 565, 569 (Tex.App.--El Paso 2003, pet. denied). *Tate v. Tate*, 55 S.W.3d 1, 7 n.4 (Tex.App.--El Paso 2000, no pet.); *Ikard v. Ikard*, 819 S.W.2d 644, 647 (Tex.App.--El Paso 1991, no writ). Thus, it is conceivable that, after reflecting on the matter, the trial court could have concluded that Mexico was an adequate forum, but that the balance of the *Gulf Oil* private and public interest factors did not favor dismissal.[9] And if this were the case, the trial court would have been justified in concluding so because sufficient evidence exists in the mandamus record to tip the balance of the private and public interest factors in favor of retaining the case, rather than dismissing it.[10] The point is that we

---

[9] As enunciated in *Gulf Oil*, the private interest factors reflect the private interests of the litigants and include: (1) the ease of access to sources of proof; (2) the availability of the compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining the attendance of willing witnesses; (4) all other practical problems, affecting the ease and expense of the case; and (5) issues related to the enforceability of a judgment obtained in the forum. *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843. On the other hand, the public interest factors reflect the interests of the forum and include: (1) the burden imposed on the citizens of the state; (2) the burden imposed on the state's court; (3) the general interest in having localized controversies decided in the jurisdiction in which they arose; and (4) the appropriateness in having a diversity case tried in a forum that is familiar with the law that must govern the case. *Gulf Oil*, 330 U.S. at 508-09, 67 S.Ct. at 843. The defendant bears the burden of establishing that the balance of factors strongly favors dismissal. *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 843.

[10] As to the private interest factors, the record establishes that many of the parties and key witnesses, who have first-hand knowledge of whether a conspiracy existed to deprive Real-Parties-in-Interest of their interest in and the use of the Mexican real property, are located in Texas and have already been deposed. For the few witnesses who reside in Mexico, their testimony can be obtained pursuant to international treaties without the need for them to travel to Texas. *See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court of S.D. of Iowa*, 482 U.S. 522, 524, 107 S.Ct. 2542, 2545-46, 96 L.Ed.2d 461 (1987)(Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters) and *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 643 (5th

13

cannot speculate on the trial court's reasons for denying the motion and assume that the trial court did not consider all of the grounds asserted in the response to the motion. If we were to do so, we would be impermissibly usurping the role of the trial judge, who is in a better position than we to appreciate the case's nuances and the parties' circumstances. *See Strather v. Dolgencorp of Tex., Inc.*, 96 S.W.3d 420, 422-23 (Tex.App.--Texarkana 2002, no pet.)(explaining that the appellate court may not speculate on the trial court's reasons for granting summary judgment and that to do so, the appellate court would be improperly placing itself in the trial court's role).

Not only have Relators failed to establish that the violence in Juarez was the sole basis the trial court relied upon to deny Relators' motion, they have also failed to challenge a ground that might have been the basis for the trial court's denial of their motion – whether the *Gulf Oil* private and public factors did not favor dismissal.[11] Because the trial court's order can rest on more than

Cir. 1994)(Inter-American Convention on Letters Rogatory and Additional Protocol). The mandamus record also shows that the parties have secured thousands of pages of discovery, virtually all of which are in English. Requiring translation into Spanish would result in significant cost to the parties and in further delay. And, contrary to Relators' assertion, the trial court has the authority to issue a judgment affecting the parties in this case, inasmuch as the trial court is not required to adjudicate title to the Mexican real property, a conclusion we reached in a companion case: No. 08-11-00110-CV.

As to the public interest factors, the burden imposed on the citizens of this state to hear a dispute involving some Mexican businesses is not great, since a majority of the parties are American companies and individuals doing business in and residing in El Paso. Because it is alleged that the tortious conduct occurred in Texas, the citizens of Texas have a vested interest in protecting themselves from such conduct. In addition, there is a strong general interest in having this controversy decided in Texas because this dispute is more properly characterized as an American controversy, notwithstanding the involvement of some Mexican businesses. As mentioned previously, many of the parties and key witnesses are located in Texas. Likewise, many of the defendants have significant contacts with Texas. The record establishes that the defendants used bank accounts opened in Texas to transact business in Texas. The record also shows that the parties had many communications and meetings in Texas, including the representations and business negotiations that form the basis of Real-Parties-in-Interest's claims in its lawsuit. Finally, it is appropriate to try this case in Texas because the trial court is familiar with the law that will govern the case. Although Relators argue that there is no dispute that Mexican law will apply, this is not entirely accurate. As mentioned previously, Relators' argument hinges on the erroneous premise that Mexican law applies because this lawsuit involves adjudication of title to real property interest in Mexico. But, as discussed above, we have concluded that there is no issue regarding the adjudication of title. Accordingly, Texas law governs the resolution of Plaintiffs' contract and tort claims.

[11] Relators do argue that the balance of the *Gulf Oil* factors favor dismissal, but they do so in their first reply brief. However, as explained in footnote eight, Relators waived this argument on appeal because they raised this issue for the

14

one ground and Relators have not challenged all of those grounds, we affirm the trial court's

judgment on the grounds to which no error was assigned. *U.S. Lawns, Inc.*, 347 S.W.3d at 849;

*Oliphant Financial L.L.C.*, 310 S.W.3d at 78; *Fox*, 224 S.W.3d at 304. We therefore hold that the

trial court did not abuse its discretion in denying Relators' motion to dismiss based on *forum non*

*conveniens*.

## CONCLUSION

Relators' petition for a writ of mandamus is denied.

May 2, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Antcliff, J., and Chew, C.J. (Senior)
Chew, C.J. (Senior)(Sitting by Assignment)

---

first time in a reply brief and not in their original brief. *Fox*, 292 S.W.3d at 249; *Few*, 271 S.W.3d at 347; *Gray*, 225 S.W.3d at 620.

15