

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ALEJANDRO DIAZ, | § | No. 08-18-00184-CV |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law No. 3 |
| LUIS AURELIO TODD, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2017-DCV4425) |

## O P I N I O N

What happens when a business operating on the Mexico side of the U.S border is owned or operated by residents of Texas, who get into a dispute that leads to litigation?  In this case,  the litigation which was filed in Texas was dismissed under the common law doctrine of *forum non conveniens* (or for non-Latin speakers, literally "forum not agreeing").  That doctrine seeks to have lawsuits decided in the most convenient forum, taking into account the plaintiff's choice of forum balanced against how a number of public and private factors that we detail below might favor an alternate forum.  In this case, the trial court made detailed findings of fact supporting the argument that this suit would be better suited for trial in Mexico.  But because it is unclear how those findings evaluated one entire side of the balance--the plaintiff's choice of forum--we reverse and remand to ensure that the proper test is applied to this case.

1

# I. BACKGROUND

## A. Factual Background[1]

This case arises out of a business dispute between Dr. Alejandro Diaz and Dr. Luis Aurelio Todd. Dr. Alejandro Diaz, Appellant here, is a citizen of Mexico who resides in El Paso, Texas, and has since 2009. Dr. Luis Aurelio Todd, Appellee here, enjoys dual citizenship and is also a resident of Texas.

Both Diaz and Todd initially worked together in Juarez, Mexico, in an entity called Familia Servicios Medicos de la Frontera S.A. de C.V., (Medicos de la Frontera) since at least 2008. The clinic performs medical examinations for persons seeking to immigrate to the United States. The U.S. Government requires such persons to undergo designated medical examinations by approved panel physicians. Medicos de la Frontera was owned by Todd's family, and during this time-period Todd had an ownership stake in the business.

Diaz resigned his position in Medicos de la Frontera in March 2013. He claims that starting in April 2013, he discussed with Todd creating their own business to provide the same kind of services. Diaz testified that "99 percent" of the conversations about starting this new business occurred at various locations in El Paso, Texas. At least according to Diaz's pleaded allegations, the two agreed to form a Texas partnership that would then create a Mexican corporation to operate the business in Mexico. And according to Diaz's allegations, the arrangement was based on Todd's promise to give up his interest in Medicos de la Frontera, which would be a competitor to their envisioned venture.

Pursuant to their plan, in July 2013, Diaz and Todd formed Medicos de Visas S. de R.L. de C.V. ("Medicos de Visas"), a Mexican corporation, to perform immigration focused medical

---

[1] We take the factual background from the allegations in the Second Amended Petition, the testimony at the *forum non conveniens* hearing, and the extensive findings of fact made by the trial judge.

examinations. Medicos de Visas gained the approval to conduct examinations for visa applicants through a memorandum of understanding with the U.S. State Department, signed at the U.S. Consulate in Juarez, Mexico. The memorandum of understanding remained in force for one year but could be renewed by the parties, although the State Department was under no obligation to do so.

Approximately a year later, Diaz and Todd formed Examenes Para Visas, S.C. ("Examenes Para Visas") another Mexican corporation. Medicos de Visas held the physical property and all the assets of the business, while Examenes Para Visas managed the employees and human resources. Both entities operated exclusively in Mexico; neither owned property, performed examinations, nor conducted business within the United States. All the employees were citizens of Mexico. The business grew, and by August 2016, it completed a two-million-dollar expansion of its facilities. But at this same time, Diaz claims Todd sabotaged the business.

Todd was responsible for the vaccine purchases. On September 8, 2016, the U.S. Consulate inspected the new facility and targeted the "cold room" where vaccines were stored. The next day the clinic received a letter from the Consular Section Chief directing it to cease administering all vaccines because of irregularities in its vaccine storage practices. On September 22, 2016, the CDC wrote the clinic pointing out specific concerns with a particular lot of vaccines obtained from Logisticia Medica, a Mexican pharmaceutical company based out of Monterrey, Mexico. The next week the State Department gave notice of its intent not to renew the memorandum of understanding for Medicos de Visas to perform immigration examinations. Without the memorandum of understanding, the business soon collapsed.

That might have been the end of the story, but Diaz believes, and later alleged in a lawsuit that he filed in County Court at Law Number Three in El Paso County, Texas, that Todd had not

3

sold his interest in the Medicos de la Frontera family business.[2]  Further, Diaz alleges that Todd's family members had pressured him into sabotaging Medicos de Visas.  Based principally on the alleged facts that Todd (1) misrepresented his divestiture in the competing company, (2) mismanaged the vaccines, and (3) affirmatively acted to have the memorandum of understanding not renewed, Diaz alleged a number of claims in his Texas suit.  He sued individually, in his capacity as partner in the alleged Texas partnership, and as a member, or alternatively on behalf of Medicos de Visas.  Diaz asserted claims for: (1) breach of fiduciary duty arising under the Texas Business Organization Code, or by virtue of a confidential relationship;  (2) common law and statutory fraud; (3) tortious interference with prospective business relationship; (4) breach of a fiduciary duty created under Mexican law;  and (5) piercing the veil of the Medicos de Visas to obtain relief from Todd directly

Aside from denying the relevant allegations, Todd filed a motion to dismiss the case under the equitable doctrine of *forum non conveniens*, arguing that all the events, witnesses, and documents were in Mexico.  Diaz responded, contending the controlling factors favored retaining his choice of a Texas forum.  After an evidentiary hearing, the trial court granted Todd's motion.

On appeal, Diaz raises ten issues for review which can generally be grouped as follows:

- Did the trial court apply the correct legal standard in deciding the motion (Issues One, Two, Three, and Four)

- Did the trial court abuse its discretion in making findings germane to the availability of an alternate forum, the resolution of public and private factors favoring a Texas or Mexico forum, and in how it substantively balanced these interests (Issues Five, Six, Seven, Eight, and Nine)

- Did the trial court procedurally err in limiting discovery (Issue Ten)

---

[2] Todd testified below that he indeed sold his interest in Medicos de la Frontera to his siblings in a transaction conducted in Juarez.  The resolution of this disputed factual question is not important to our decision.

4

## II. CONTROLLING LAW

The doctrine of *forum non conveniens* "den[ies] audience to a case on the merits, [requiring instead] that the merits should be adjudicated elsewhere." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007) (internal quotes and citations omitted). A trial court should apply the doctrine of *forum non conveniens* when it determines that, for the convenience of the parties and witnesses and in the interest of justice, the action should be instituted in another forum. *Exxon Corp. v. Choo*, 881 S.W.2d 301, 302 n.2 (Tex. 1994). The doctrine properly applies when the court might otherwise have personal jurisdiction over the parties, but the action lacks a significant connection to the forum. *In re Bridgestone Americas Tire Operations, LLC*, 459 S.W.3d 565, 568 (Tex. 2015). For Texas wrongful death and survival claims, the analysis is dictated by statute. *See* TEX.CIV.PRAC.& REM.CODE ANN. § 71.051 (setting out specific test for wrongful death and survival claims); *In re Mahindra, USA Inc.*, 549 S.W.3d 541, 544 (Tex. 2018) (distinguishing statutory and common law requirements); *Alvarez Gottwald v. Dominguez de Cano*, 568 S.W.3d 241, 246 (Tex.App.--El Paso 2019, no pet.) (same). But in this case, the *forum non conveniens* analysis is dictated by the common law. And Texas courts have routinely looked to a well-developed body of federal law to guide *forum non conveniens* disputes. *See Quixtar Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 32 (Tex. 2010) ("[W]e regularly consider United States Supreme Court precedent in both our common law and statutory forum non conveniens cases."); *In re Omega Protein, Inc.*, 288 S.W.3d 17, 20 (Tex.App.--Houston [1st Dist.] 2009, original proceeding) (noting same).

At its core, *forum non conveniens* is a balancing act. Courts balance the plaintiff's choice of forum against how a set of public and private interests might "strongly favor" an available alternate forum. *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983) ("[A]

5

forum non conveniens dismissal must be based on the finding that, when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate and available alternative forum."). Stated otherwise, the plaintiff's choice of forum is entitled to deference, and a defendant seeking *forum non conveniens* dismissal "bears a heavy burden" to overcome that chosen forum. *Quixtar*, 315 S.W.3d at 31 *citing Sinochem*, 549 U.S. at 430; *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, (1981) ("[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private- and public-interest factors clearly point towards dismissal and trial in the alternative forum."). [3] This strong presumption, however, applies only for a resident of a State filing suit in that same State. A non-resident plaintiff's choice to sue in Texas enjoys "substantially less deference" than it would if the plaintiff had been a resident of Texas. *Quixtar*, 315 S.W.3d at 33.

There is of course nothing to balance if there is no alternative forum that is both adequate and available. *See In re Elamex, S.A. de C.V.*, 367 S.W.3d 879, 887 (Tex.App.--El Paso, 2012, no pet.) ("[b]ecause the common law doctrine of *forum non conveniens* presumes that at least two forums are available to a plaintiff, a trial court must *first* determine whether an alternative forum exists, inquiring whether another forum is 'available' and 'adequate'") (emphasis added); *Alvarez Gottwald*, 568 S.W.3d at 249 ("[U]nder common law *forum non conveniens* analysis, whether a forum is both available and adequate is a threshold question to be answered before a court can weigh the public and private factors considered in a common law *forum non conveniens* analysis.").

If such an alternate forum exists, the court then looks to the relevant public and private

---

[3] In statutorily guided *forum non conveniens* disputes, a case may not be dismissed as to a Texas resident, no matter how tenuous its connection to Texas. *In re Bridgestone Americas Tire Operations, LLC*, 459 S.W.3d 565, 569 (Tex. 2015). The statute dictates this result "without regard to a plaintiff's country of citizenship or national origin[.]" Tex.Civ.Prac.& Rem.Code Ann. § 71.051(e).

interests, first laid out in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). The private considerations include: (1) the "relative ease of access to sources of proof"; (2) the "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses"; (3) the "possibility of view of premises, if view would be appropriate to the action"; (4) the "enforceability of a judgment" once obtained; and (5) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 508. The public considerations include: (1) "[a]dministrative difficulties . . . for courts when litigation is piled up in congested centers instead of being handled at its origin"; (2) the burden of "[j]ury duty . . . that ought not to be imposed upon the people of a community which has no relation to the litigation"; (3) "local interest in having localized controversies decided at home"; and (4) avoiding conflicts of law issues. *Id.* at 508-09.

## II. STANDARD OF REVIEW

The determination of whether to grant or deny a motion to dismiss based on *forum non conveniens* is committed to the sound discretion of the trial court. *Quixtar*, 315 S.W.3d at 31, *citing Piper Aircraft*, 454 U.S. at 257; *Alvarez Gottwald*, 568 S.W.3d at 245. As such, reversing a trial court's dismissal under the doctrine of *forum non conveniens* is only proper when there has been a clear abuse of discretion. *Id. quoting Piper Aircraft*, 454 U.S. at 257.

A trial court commits an abuse of discretion when it acts without reference to any guiding rules and principles, and when there is no evidence to support its ruling. *Quixtar*, 315 S.W.3d at 31 *citing Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *In re Elamex*, 367 S.W.3d at 885. When reviewing the trial court's decision for an abuse of discretion, we may not substitute our judgment for that of the trial court on resolution of factual issues or matters committed to the trial court's discretion. *See Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.

1992); *see also Downer*, 701 S.W.2d at 242. But we are much less deferential when reviewing the trial court's determination of the legal principles controlling its ruling. *In re Elamex*, 367 S.W.3d at 896. A trial court has no discretion in determining what the law is or applying the law to the facts, even when the law is unsettled. *Id. citing In re Prudential Insurance Co. of America*, 148 S.W.3d 124, 135 (Tex. 2004). A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Walker*, 827 S.W.2d at 840.

## III. DISCUSSION

In a series of issues, Diaz contends that the trial court applied the wrong standard in deciding the motion, misapplied the factors that it did, and abused its discretion in a discovery matter. We re-order the issues somewhat to follow the *forum non conveniens* test which first asks whether another forum exists, and only if so, how the relative interests are balanced.

### A. The Availability of an Alternate Forum

The trial court found that Mexico offered an adequate and available forum. It also found that Todd had consented to submit himself to the jurisdiction of the Mexican courts for this dispute. Diaz's eighth issue contends that the trial court erred in that finding because the record does not show that four other persons--all other members of Todd's family--would be amenable to the jurisdiction of a Mexican court. We reject the argument.

None of the other persons Diaz references in his brief are parties to this suit. The trial court can only resolve the motion based on the pleading before it, and not what Diaz might allege in the future. As in *Alavarez Gottwald*, Todd has consented to jurisdiction in the Republic of Mexico, so all the parties to the suit would be amendable to the jurisdiction of a Mexican court.

And we also agree with the trial court that the Republic of Mexico offers an alternate forum. As to the adequacy of the forum, Texas courts have consistently found Mexico to be an adequate alternate forum. *See, e.g.*, *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 677-78 (Tex. 2007); *Celanese*

8

*Corp. v. Sahagun*, No. 05-19-00402-CV, 2020 WL 2079178, at *4 (Tex.App.--Dallas Apr. 30, 2020, no pet.) (mem.op.); *Vinmar Trade Finance., Ltd. v. Utility Trailers de Mexico, S.A. de C.V.*, 336 S.W.3d 664, 674-76 (Tex.App.--Houston [1st Dist.] 2010, no pet.). The federal courts have agreed. *See, e.g.*, *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 663-67 (9th Cir. 2009); *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 796-98 (5th Cir. 2007) (per curiam). Differences in procedural or substantive law do not render the alternate forum inadequate so long as they do not deprive a party of all remedies or treat parties unfairly. *In re Pirelli*, 247 S.W.3d at 678. Rather, such differences arise as part of national sovereignty. *Id.*; *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 381 (5th Cir. 2002).

Having confirmed a possible alternate forum, the trial court then had to balance Diaz's choice of forum against the convenience of a suit in Mexico, based on a series of private and public factors. In that regard, Diaz asserts several arguments challenging how the trial court evaluated his side of the balance which we address next.

### B. Dismissal When Both Parties are Texas Residents

In his first issue, Diaz contends that the trial court is absolutely precluded from dismissing a case when both the plaintiff and defendant are Texas residents. We find no law supporting that claim, and Diaz cites none. The Texas Supreme Court has left no doubt that a court might, given the right circumstances, dismiss a case filed by a Texas resident. *In re Mahindra*, 549 S.W.3d at 544 ("Thus, under the common law, public and private factors may dictate dismissal in favor of another forum even when the plaintiff is a Texas resident."). And the *forum non conveniens* doctrine presupposes that the defendant is subject to the forum's personal jurisdiction, which would only happen through contacts sufficient to establish specific or general jurisdiction. *See In re Bridgestone*, 459 S.W.3d at 568. Accordingly, the fact that both plaintiff and defendant can

9

claim Texas residence does not by itself answer the broader question of what forum is the most convenient under the correctly applied *forum non conveniens* test. We overrule Issue One.

### C. Did the Trial Court Properly Balance Diaz's Choice of Forum?

In his second issue, Diaz argues that the trial court abused its discretion by failing to apply the correct legal standard to accord proper deference to his choice of forum. Similarly, in his fourth issue, Diaz complains that the trial court failed to make a finding that public and private interest factors *strongly* favored dismissal. A resident of Texas would be entitled to a strong presumption that his or her chosen forum is correct, while a non-resident is entitled to some, but considerably less deference. *Piper Aircraft*, 454 U.S. at 256. Diaz contends that the trial court gave his choice little deference because at the time of these events, he was living in Texas on a temporary visa. And while the trial court correctly identified the public and private factors in the balance, the court concluded they "weigh in favor of dismissal," but never stated they strongly favored dismissal. From this Diaz posits that the trial court applied the wrong legal standard, a quintessential basis to find an abuse of discretion.

In response, Todd contends that a person who sets up their affairs to effectively reside in both the United States and a foreign country, and then engages in business in the foreign country, cannot claim the "strong" presumption accorded to residents for a claim arising out of that business endeavor. *See DTEX*, 508 F.3d at 795 (incorporating as appendix district court opinion partially discounting plaintiff corporation's choice of forum when it engaged in extensive business in foreign country where the claim arose). The trial court's findings appear to adopt this rationale.

The trial court found that Diaz resided continuously in Mexico from birth until 2009 "when he moved to El Paso, Texas, pursuant to a TN non-immigrant visa.[4] The evidence would support

---

[4] A "TN" visa would permit a citizen of Canada or Mexico to live and work in the United States, initially for a three-

10

that finding, as Diaz provided his Texas residential address at the hearing. He held a Texas driver's license and testified that his children attended school in El Paso. He commuted between El Paso and Juarez, Mexico for work each day. But the trial court entered other findings identifying his active connections to Mexico:

35. Dr. Diaz testified that he is a resident of El Paso, Texas, but the evidence at the hearing showed that Dr. Diaz maintained at all relevant times a permanent presence, including a place of business and an address, in Mexico.

36. Dr. Diaz has a Mexican driver's license, and is registered to vote in Mexico. He is not registered to vote and cannot vote in the United States. Dr. Diaz has a vehicle registered in Mexico, and still to this day maintains an address in Mexico for the purpose of such registration.

37. Dr. Diaz completed military service in Mexico, and maintains a federal tax identification number in Mexico. Dr. Diaz has filed federal income tax returns in Mexico continuously every year since he began working until 2016.

38. Dr. Diaz became a permanent resident of the United States on September 26, 2017, and prior to that he was living in El Paso, Texas as under a "TN" "non-immigrant" visa on a temporary basis.

39. While Dr. Diaz established lawful permanent residence in the United States in September 2017, all the facts alleged in this case are alleged to have occurred prior to such date, at a time when Dr. Diaz was working as a Mexican physician, practicing medicine in Mexico, with a place of business in Mexico, a designated address and domicile in Mexico, and conducting business exclusively in Mexico through two Mexican entities.

The trial court's conclusions of law also suggest it adopted a standard that devalues the "Texas resident" interest when the plaintiff also maintains foreign connections. The trial court correctly stated that "[t]he defendant bears the burden of proof on all elements of the forum non conveniens analysis and must establish that the balance of factors strongly favors dismissal." In the same finding, however, the court concluded that "[p]arties who choose to engage in international transactions should know that when their operations lead to litigation they cannot

___

year period. 8 C.F.R. § 214.6 (e). The visa could be extended for another three-year period if certain conditions were met. 8 C.F.R. § 214.6(h)(iii). Under these provisions, Diaz's visa would have run out sometime in 2015 but "[i]n practice, however, federal law permits many aliens with TN or H1-B status to maintain their temporary worker authorization for a period greater than six years." *Dandamudi v. Tisch*, 686 F.3d 66, 70-71 (2nd Cir. 2012).

11

expect always to bring their opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere."

Two Texas cases support the trial court's view. In *DTEX, LLC v. BBVA Bancomer, S.A.*, a South Carolina textile manufacturer borrowed substantial sums from a Mexican bank, secured by a lien on its equipment at plant located in Mexico. 512 F.Supp.2d at 1013, *aff'd*, 508 F.3d 785 (5th Cir. 2007). Following its default on the note, the manufacturer and bank engaged in protracted legal proceedings in Mexico, some marred by allegations of bribery, fraud, perjury, false arrest, and robbery. *Id*. at 1018. The textile company then filed suit in South Carolina to resolve the remaining disputes. *Id*. at 1019. After transfer of the case to the Southern District of Texas, the court dismissed the suit on *forum non conveniens* grounds. In its opinion, the federal district judge quoted an earlier Ninth Circuit decision stating that [i]n an era of increasing international commerce, parties who choose to engage in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere."[5] *Id*. at 1020, *quoting Contact Lumber Co. v. P.T. Moges Shipping Co., Ltd.*, 918 F.2d 1446, 1450 (9th Cir. 1990).

Citing *DTEX*, the Houston First adopted and somewhat extended that same rationale, writing that "the Fifth Circuit, and other federal circuits, have taken the position that the forum choice of a resident plaintiff is given less deference when, as in this case, the plaintiff is a corporation that has chosen to conduct extensive business in foreign countries and then is injured

---

[5] That quote is picked up verbatim in the trial court's conclusions of law in this case. The original quote from *Contact Lumber* is accurate, but the court there still found that the public and private interests substantially outweighed the plaintiff's choice of forum. *Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*, 918 F.2d 1446, 1453 (9th Cir. 1990) ("Finally, appellee has established that the private and public interests weigh heavily on the side of trial in the foreign forum.").

or defrauded in the foreign venue as a result of those business transactions." *Vinmar*, 336 S.W.3d at 678, *citing DTEX*, 508 F.3d at 795; *see also Brenham Oil & Gas, Inc. v. TGS-NOPEC Geophysical Co.*, 472 S.W.3d 744, 766-67 (Tex.App.--Houston [1st Dist.] 2015, no pet.) (similarly applying the *Vinmar* rationale).

On the other side of the argument, a district court in the Western District of Texas distinguished *DTEX*, limiting its application to corporate entities. *See Tellez v. Madrigal*, 223 F.Supp.3d 626, 640 (W.D. Tex. 2016). *Tellez* is something of a divorce case. Both spouses were Mexican citizens, but one lived in El Paso as a lawful permanent resident; the other spouse resided in Mexico. They were shareholders and officers in a Mexican corporation and on the dissolution of the marriage, issues regarding management of the Mexican corporation predictably arose. When suit was filed in El Paso by the lawful permanent resident spouse, the other spouse moved to dismiss the case on *forum non-conveniens* grounds, arguing instead for resolution in Mexico. And relevant here, the district court rejected the rationale of *DTEX* to devalue the lawful permanent resident alien's choice of forum:

> There is a question as to precisely what deference is owed to Fuentes, who is a lawful permanent resident of the United States, but not a United States citizen. Vergara argues that Fuentes's "significant presence" in a foreign forum means that she is entitled to less deference in her choice of a domestic forum. Vergara also asserts that: "because Fuentes is not a U.S. citizen . . . her choice to pursue litigation in Texas is not entitled to the usual deference." Fuentes rejoins that "because [she] legally resides in El Paso, her choice . . . is entitled to the same deference as an American plaintiff suing in her home forum." The Court is unconvinced by Vergara's argument that Fuentes's significant presence in a foreign forum means that her choice of a U.S. forum is entitled to less deference.

*Id.* at 640 (record citations omitted).

The court reached its conclusion based on two arguments. First, it concluded that the *DTEX* rationale was limited to corporate entities, and it had before it two individuals. Second, the court reasoned that the line of cases devaluing a non-resident's choice of forum was based on a

13

presumption of convenience. *Id*. A party filing suit in a place other than its residence does so for reasons other than convenience, and it would make no sense to accord that party a strong presumption in favor of the place of suit. Conversely, a party filing in its place of residence does so for convenience, which is the central focus of the *forum non conveniens* inquiry. *Id.*; s*ee also Rivas v. Greyhound Lines, Inc.*, EP-14-CV-166-DB, 2018 WL 1896413, at \*2 n.5 (W.D. Tex. Mar. 1, 2018) (mem.op.), *reinstatement denied*, EP-14-CV-166-DB, 2019 WL 1061744 (W.D. Tex. Mar. 5, 2019) (mem.op.) (following *Tellez* to the extent that permanent resident alien was accorded the same deference as a resident citizen, but nonetheless dismissing case based on the balance of interests).

The question raised is one of first impression for this Court. Although the question is close, we choose to follow the evaluation of the resident plaintiff's interest from *Tellez*. We are less sure that distinctions should be made between individual and corporate entities, but that precise question is not before us. Instead, the only question here is whether a person living in Texas on a temporary visa should be accorded the same strong presumption of convenience, as would any Texas resident. We decline to adopt an application of the test that creates a strong presumption for some, but not others, based on the various categories of legal immigration status.

The other part of the *DTEX* rationale is that the plaintiff's knowing involvement in a foreign jurisdiction diminishes any expectational interest in having Texas resolve disputes arising from that involvement. In that regard, we agree with the *Tellez* court that at its core, *forum non conveniens*, is about convenience of conducting the litigation, and not about the parties expectational interests of where to litigate. *See Piper Aircraft*, 454 U.S. at 255-56 (noting the "central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient"). The very acts undertaking a business in a foreign jurisdiction are undoubtedly considered when the court applies the public and private factors as a part of the convenience balancing analysis.

14

That is, a Texas resident who establishes and runs a business in Mexico (or any other country) will by necessity implicate the laws of the foreign country, as well as foreign witnesses and events which give rise to the lawsuit. And the weight of those considerations can, in the appropriate case, dwarf even the strong presumption of the plaintiff's initially selected forum. But to invoke those considerations on one side of the balance, and then also use them to diminish the presumption of the plaintiff's chosen forum, in effect double counts the considerations.

The trial court apparently adopted the rationale for *DTEX*. We, however, reject that rule, at least to the extent that it either devalues the plaintiff's choice of forum, or allows for something less than the public and private factors strongly weighing against the plaintiff's choice of forum.[6] Although we acknowledge that the trial court was faced with conflicting authority (as are we), even an application of the law in an area of unsettled law, can constitute an "abuse of discretion." *In re Elamex*, 367 S.W.3d at 896, *citing In re Prudential*, 148 S.W.3d at 135. Because we conclude the trial court applied the incorrect standard for one-half of the balancing test, we find an abuse of discretion.

Two final notes on this issue. Todd contends that the "strongly favors" or "strong presumption" argument springs out of an older Dallas Court of Appeals that may not be good law. *Sarieddine v. Moussa*, 820 S.W.2d 837, 844 (Tex.App.--Dallas 1991, writ denied) ("The doctrine of forum non conveniens should be exercised only in those cases where the balance of factors so strongly favors the defendant that, in the interest of justice, the case should be tried in another forum."). As Todd correctly notes, the Texas Supreme Court later questioned *Sarieddine*, but did so regarding its application of the strongly favor language to a *nonresident's* forum choice. *Quixtar*, 315 S.W.3d at 32. Abundant authority still instructs that a resident's choice of forum

---

[6] In a sense, Diaz's Issue Two and Issue Four are two sides of the same coin--one arguing that the trial court devalued his choice of forum, and the other arguing the private/public factors were not shown to strongly outweigh that choice.

15

should be accorded significant weight, or stated otherwise, the balance should strongly favor the alternate forum. *See Gulf Oil*, 330 U.S. at 508 (courts should rarely disturb a plaintiff's forum choice "unless the balance is strongly in favor of the defendant"); *In re Mahindra*, 549 S.W.3d at 544 (noting that the common law affords great deference to the plaintiff's forum choice, particularly when it is also the plaintiffs residence).

Our second note is that having identified the appropriate weight to be given Diaz's choice of forum, it would be inappropriate for this Court to then balance the factors. We do not review *forum non conveniens* rulings de novo. *Quixtar*, 315 S.W.3d at 35; *Vinmar*, 336 S.W.3d at 673-74. It is for the trial court in the first instance to make the appropriate balance. And the only complaint about that balance that we reach is the question of whether the appropriate test was applied in the balancing process. On remand, if the parties raise the issue again, the trial court will have to undertake the balance, and nothing in this opinion should suggest how the several public and private interests should weigh in the process. We remand solely out of a concern that the plaintiff's choice of forum may not have been accorded the weight that it was due. We sustain Issues Two and Four.

### D. Oppression and Vexation are not Distinct Elements.

Out of prudential interest, we also address one other issue that would be potentially dispositive, and which might arise again on remand.

In Issue Three, Diaz contends that the trial court abused its discretion by dismissing the case without an express finding that the private interest factors "imposed oppressiveness and vexation" on Todd. That language appears in *Sinochem*, 549 U.S. at 429-30, *quoting Piper Aircraft*, 454 U.S. at 241, *in turn quoting Koster v. (American) Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 524 (1947). But we see no indication that this language has been applied as a distinct element for the *forum non conveniens* analysis. If anything, it is simply another way to say that

16

litigating the case in Texas would be inconvenient for the defendant. The test is as we state it above--a balance between the plaintiff's choice of forum and the public and private factors that are implicated by an available alternate forum. Issue Three is overruled.

## IV. CONCLUSION

For the reasons noted, we reverse the dismissal of Appellant's action based on Issues Two and Four. We expressly overrule Issues One, Three, and Eight. We decline to reach Issues Five, Six, Seven, and Nine because they relate to how one half of the balance of interests is to be weighed when we have found the other half of the balance may not have been properly accounted for. We also decline to reach Issue Ten, a discovery issue for which it does not appear the trial court ever issued a ruling and which therefor presents nothing for review. We remand the case for further proceedings not inconsistent with this opinion.


JEFF ALLEY, Chief Justice

November 4, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.
Palafox, J., concurring