**PREVISION INTEGRAL DE SERVICIOS FUNERARIOS, S.A. DE C.V., et al.**

v.

**Teresa KRAFT, et al.**

**No. EP–99–CA–226–DB.**

United States District Court, W.D. Texas, El Paso Division.

April 26, 2000.

Tommy O'Shea Gilstrap, Jr., Stading & Gilstrap, El Paso, TX, Michael R. Milligan, El Paso, TX, for plaintiffs.

J. Monty Stevens, El Paso, TX, Carl H. Green, Mounce, Green, Myers, Safi & Galatzan, El Paso, TX, for defendants.

## MEMORANDUM OPINION AND ORDER

BRIONES, District Judge.

On this day, the Court considered Defendant Teresa Kraft's Motion to Dismiss for Forum Non Conveniens, filed in the above-captioned cause on February 9, 2000. Plaintiffs filed a Response to Defendant's Motion on March 7, 2000.

After due consideration, the Court is of the opinion that Defendant's Motion should be denied for the reasons that follow.

## BACKGROUND

The complex facts and procedural background of this cause are detailed throughout the Court's previous Orders and the Parties' filings. At bottom, Plaintiffs—family-owned funeral parlors operating in Ciudad Juarez, Mexico—allege that Defendant—a family member and minority shareholder in each Plaintiff corporation—misappropriated and/or converted funds from Plaintiffs through various means. Sometime before 1999, Defendant opened various investment accounts with A.G. Edwards & Sons, Inc. ("A.G.Edwards"), an El Paso, Texas, financial services outfit, and transferred funds allegedly belonging to Plaintiffs into these accounts.

At some point, Plaintiffs' majority shareholder, Salvador Perches, Sr. ("Perches Sr.")—Defendant's father—discovered the alleged transfers. Perches, Sr. went to A.G. Edwards in November 1998 and convinced account executive John K. Hawley, the person handling Defendant's accounts, to hold the funds in Plaintiffs' names and to not allow further activity with the funds absent his approval. Later, in June 1999, Plaintiffs discovered that Defendant unilaterally moved those A.G. Edwards accounts to Merrill, Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), another El Paso financial services outfit.

Consequently, Plaintiffs filed this cause against Defendant, A.G. Edwards and Merrill Lynch in the 171st Judicial District Court of El Paso County, Texas (the "state court"), in June 1999. Plaintiffs sought and received a Temporary Restraining Order from that court on or about June 11, 1999, which froze assets Merrill Lynch held in Defendant's name. Defendant thereafter removed the cause to this Court on July 8, 1999. Then, pursuant to an agreement among the Parties, A.G. Edwards and Merrill Lynch deposited certain funds into the Court's Registry by way of interpleader and the Court dismissed Plaintiffs' claims against those entities.

Defendant contends that she is entitled to the funds based on a contract allegedly executed in Mexico between Defendant and Perches, Sr. In that vein, Defendant twice sought leave of Court to file a counterclaim alleging breach of that contract, which the Court denied twice, by Orders entered December 10, 1999, and February 23, 2000. Defendant also allegedly filed a lawsuit in the 6th Civil Court of Ciudad Juarez sometime in January 2000 to determine the validity and construction of that alleged contract.

## DISCUSSION

■ Through the instant Motion, Defendant asks the Court to dismiss this cause pursuant to the ancient doctrine of forum non conveniens. That doctrine allows a court to dismiss a case properly within its jurisdiction in favor of trial in another forum with jurisdiction to hear the cause

"when trial in the plaintiff's chosen forum would 'establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience,' or when the 'chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Kempe v. Ocean Drilling & Exploration Co.*, 876 F.2d 1138, 1141 (5th Cir.1989) (quoting *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 832, 91 L.Ed. 1067 (1947)). Defendant contends that, because "the dispute in this case is centered in Mexico," the suit should proceed in Mexico. Plaintiffs, in reply, contend that this case has nothing to do with Mexico. Rather, Plaintiffs contend, this cause is about Defendant's financial malfeasance and about ownership of the funds deposited into the Court's Registry and elsewhere. The Court agrees with Plaintiffs.

At the outset, the Court notes that Defendant bases her Motion in part on a somewhat erroneous or misleading understanding and description of the nature of this cause. Defendant repeatedly contends that this cause concerns only the contract she allegedly entered into with her father entitling her to the funds eventually deposited into the Court's Registry, and that the "crux of this case is the validity of the contract." Defendant's contentions simply are incorrect. As far as the Court can tell from the pleadings, this cause relates to Plaintiffs' claims against Defendant for conversion, fraud, statutory fraud and breach of fiduciary duty, and for an accounting and constructive trust, all under Texas law. Plaintiffs nowhere allege a breach of any contract. Though Defendant might intend to present evidence relating to the alleged contract in pursuit of a defense to Plaintiffs' claims,

that defense does not thereby convert Plaintiffs' action into one for breach of contract. Defendant's arguments herein are thoroughly tainted by this misconception. That said, the Court addresses the Parties' contentions.

It is well-settled that the moving party bears the burden of persuasion when invoking the forum non conveniens doctrine. *See Camejo v. Ocean Drilling & Exploration*, 838 F.2d 1374, 1379 (5th Cir.1988) (citing *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1164 (5th Cir.1987) (*en banc*), *vacated on other grounds sub nom., Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989), *reinstated*, 883 F.2d 17 (1989) (*en banc*)). As the moving party, Defendant carries this burden through all steps of the analysis and each relevant factor. *See id.* (citing *Air Crash*, 821 F.2d at 1164–65); *see also Air Crash*, 821 F.2d at 1164 (stating that the burden of persuasion "runs to all the elements of the forum non conveniens analysis"). In this regard, the moving party must "put forth unequivocal, substantiated evidence presented by affidavit testimony" sufficient "to enable the district court to balance the parties [sic] interests." *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1551 & n. 14 (5th Cir.1991) (quoting *Air Crash*, 821 F.2d at 1164); *see also Air Crash*, 821 F.2d at 1164; *but see id.* at 1165 n. 29 (noting that level of detail needed depends on particular facts but "does not call for a detailed development of the entire case").

■■■ The forum non conveniens inquiry involves a three-step analysis. *See Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 835 (5th Cir.1993).[1] First, "[t]he district court must . . . decide whether an available and adequate foreign forum ex-

---

1. The Court notes that, occasionally, courts refer to a two-step inquiry, combining steps two and three into just one "balancing". *See, e.g., Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 221–22 (5th Cir.2000) ("If an alternate forum that is both available and adequate exists [—step one—], the court must next assess whether, considering relevant private interest and public interest factors, dis-

missal is warranted."). Other courts, however, address each step independently. *See, e.g., Baumgart*, 981 F.2d at 835 ("A *forum non conveniens* analysis involves a three step inquiry."); *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 343 (5th Cir.1999) (noting district court's finding that private factors outweighed by public factors). Clearly,

ists." *Air Crash*, 821 F.2d at 1165. Second, "[i]f the court concludes that the foreign forum is both available and adequate, it should then consider all of the relevant factors of private interest, weighing in the balance the relevant deference given the particular plaintiff's initial choice of forum." *Id.* Finally, "[i]f the district court finds that the private interests do not weigh in favor of the dismissal, it must then consider the public interest factors." *Id.* "The ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 827 (5th Cir.1986) (quoting *Koster*, 330 U.S. at 527, 67 S.Ct. at 833).

### A. Availability and Adequacy of a Foreign Forum

■ The first prong involves a further two-part inquiry: availability and adequacy. *See Air Crash*, 821 F.2d at 1165.

"A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum." *Baumgart*, 981 F.2d at 835 (quoting *Air Crash*, 821 F.2d at 1165). The "defendant's submission to the jurisdiction of an alternative forum renders that forum available for purposes of forum non conveniens analysis." *Syndicate 420*, 796 F.2d at 830.

whether bound by two or three steps, a court must make three independent inquiries. *See Baris*, 932 F.2d at 1550 (disapproving district court's consideration of public factors which "should not enter into decision until it resolves the ... private interest factors" and noting that third step need not be taken if second step warrants dismissal).

2. The Court further notes that, in essence, this case is about the money in the Court's Registry. This cause began when Plaintiffs sued A.G. Edwards and Merrill Lynch as well as Defendant, looking for their money. A.G. Edwards and Merrill Lynch wisely deposited the funds they held into the Court's Registry as part of separate interpleader cross-claims against Defendant and counter-claims against Plaintiffs. Thereafter, the Court dismissed Plaintiffs' claims against A.G. Edwards and Merrill Lynch without prejudice, leaving only Plaintiffs and Defendant Kraft as Parties to this action.

Here, defendant contends, without affidavit support, that Mexico is available because Plaintiffs are Mexican corporations and Defendant is a Mexican national subject to process in Mexico, and because "litigation is pending in Mexico involving the same parties and issues." Defendant's affidavit merely states that a lawsuit is pending in Mexico "between the Plaintiff corporations herein and myself." She does not attach any supporting documentation. Moreover, Defendant does not state in any way that she *will* submit to the jurisdiction of an alternative forum so as to render that forum available. Notwithstanding, Defendant does make the base averment that she is amenable to service of process in Mexico, and were the Court inclined to grant Defendant's Motion, the Court easily could grant a dismissal conditioned on Defendant's actual submission to suit in Mexico. *See Air Crash*, 821 F.2d at 1166; *cf. Robinson v. TCI/US West Comm., Inc.*, 117 F.3d 900, 907–08 (5th Cir.1997) (holding failure to include return jurisdiction clause when granting forum non conveniens motion *per se* abuse of discretion and remanding with instruction to add a return jurisdiction clause). Hence, although Defendant's proof as to availability is somewhat lacking, the Court finds Mexico an available forum.[2]

Should the Court dismiss this cause today for forum non conveniens, where would that money go? Who would hold those funds pending outcome of the litigation? The Court would be hard pressed to turn over the funds to one of the Parties for safe delivery to the Mexico court's Registry (if there is such a thing, which Defendant also does not address). Alternatively, could the Court deliver the funds itself directly to the Mexico court? Also, if the Court somehow forced A.G. Edwards and Merrill Lynch back into the fray as the original stakeholders, then Defendant has not shown that personal jurisdiction in Mexico is available as to *all Parties*, including A.G. Edwards and Merrill Lynch. Because the Parties did not address these issues and because there are several other reasons to deny Defendant's Motion, the Court need not resolve these questions here.

"A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Baumgart*, 981 F.2d at 835 (quoting *Air Crash*, 821 F.2d at 1165). A forum is inadequate only where it essentially would afford the plaintiff no remedy at all. *See Kempe*, 876 F.2d at 1143 ("[I]f the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, ... the district court may conclude that dismissal would not be in the interests of justice."); *Air Crash*, 821 F.2d at 1165. "Absent unfairness, differences in the law of the alternate forum are not a substantial factor to consider." *Empresa Lineas Maritimas Argentinas, S.A. v. Schichau–Unterweser, A.G.*, 955 F.2d 368, 371 (5th Cir.1992). A court should presume that such a forum is adequate absent a showing to the contrary. *See Vaz Borralho v. Keydril Co.*, 696 F.2d 379, 390 (5th Cir.1983), *overruled on other grounds by Air Crash*, 821 F.2d 1147.

Here, Defendant's affidavit evidence, while scant, demonstrates for these purposes that Mexico is also an adequate forum. Defendant points out that another litigation between the Parties is ongoing in the alternative forum. While perhaps addressing personal jurisdiction aspects, this fact does not thereby render the foreign forum "adequate" with respect to Plaintiffs' claims herein. *See, e.g., Baris*, 932 F.2d at 1550 ("By showing only that they were being sued in the [foreign forum] by [other potential plaintiffs in the same] maritime disaster, the defendants failed to provide sufficient information with which to support the required 'procedural framework.' "). Plaintiffs, on the other hand, point out that Defendant wholly fails to address how a court in Mexico would have subject matter jurisdiction over this action or whether it would accept such jurisdiction. *See, e.g., Seguros Comercial Americas v. American President Lines*, 910 F.Supp. 1235, 1247 (S.D.Tex.1995) (noting

the defendant's inclusion of affidavit from Mexican attorney to show Mexico would accept jurisdiction of type of case involved therein sufficient). However, because Plaintiffs do not contend that Mexico would somehow be an unjust forum, the Court finds that Mexico is an adequate forum and, consequently, Defendants have met their burden as to the first prong of the analysis.

### B. Private Interest Factors

■ "Once an adequate and available foreign forum is found to exist, the district court should consider all of the relevant private interest factors to determine each forum's convenience to the parties. If the private factors weigh in favor of dismissal, no further inquiry need be made." *See Baris*, 932 F.2d at 1550–51 (citation omitted). The private factors include the following:

■ relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; [3] probability of view of premises, if view would be appropriate to the action; and [4] all other problems that make trial of a case easy[,] expeditious and inexpensive. [5] There may also be questions as to the enforcibility [sic] of a judgment if one is obtained.

*Id.* at 1550 n. 15 (quoting *Air Crash*, 821 F.2d at 1162).[3] "While reviewing these private interest factors, the court should also consider whether the defendant's motion to dismiss was filed in a timely manner." *Baumgart*, 981 F.2d at 836. Here, Defendant fails to meet her burden to show that the private interest factors weigh in favor of disturbing Plaintiffs' choice of forum.

■ Defendant first contends that Plaintiffs' choice of forum deserves less deference than a resident plaintiff's. As a general matter, Defendant's assertion is correct. *See Kempe*, 876 F.2d at 1146 (citing *Piper Aircraft v. Reyno*, 454 U.S. 235, 255–56, 102 S.Ct. 252, 265–66, 70

**3.** The third factor—viewing of the premises— is not applicable here.

L.Ed.2d 419 (1981); *Air Crash*, 821 F.2d at 1164). However, Plaintiffs contend that their foreign citizenship does not require the Court to give Plaintiffs' forum choice no weight. The Court agrees with Plaintiffs. *See Air Crash*, 821 F.2d at 1165 n. 26 ("The Court's language that a foreign plaintiff's forum selection deserves less deference is not an invitation to accord a foreign plaintiff's selection of an American forum no deference . . . ."). Furthermore, the Court repeats that the true goal of the forum non conveniens analysis is to determine whether "trial in the chosen forum would be unnecessarily burdensome for the defendant or the court," not whether Plaintiffs or Defendant should have the "home-field advantage." *Id.; see also Command–Aire Corp. v. Ontario Mechanical Sales & Svc. Inc.*, 963 F.2d 90, 95 (5th Cir.1992) ("Convenience is at the heart of the inquiry."). For similar reasons, Plaintiffs' contention that Defendant is precluded from contesting this forum's convenience simply because she invoked the Court's jurisdiction by removing this cause from state court is inapposite. *See Baumgart*, 981 F.2d at 835 (rejecting contention that removal precludes forum non conveniens dismissal).

## 1. Relative ease of access to sources of proof

 Here, Defendant does not identify any specific source of proof which will not be available to her outside of Mexico. Although she contends that the original of the alleged contract entitling her to the contested funds is in Plaintiffs' custody or control in Mexico, Plaintiffs contend that no such original exists.[4] Even assuming such an original does exist, the Court has jurisdiction over Plaintiffs, and, thus, the Court could compel Plaintiffs to produce such a document in this Court. For similar reasons, Defendant's contention that Plaintiffs' corporate records are located in Mexico does not tip this factor in Defendant's favor. Plaintiffs can be compelled to produce any relevant materials in this Court. Moreover, Defendant has not shown how Defendant's corporate records are necessary or relevant.

Defendant also has not identified any necessary witness which will be unavailable to her in the United States. At best, Defendant notes that the attorney who drafted the alleged contract, Gabriel Villarreal Mendoza ("Villarreal"), and an (unnamed) notary "attesting the contract" are in Mexico. However, Plaintiffs point out that Villarreal avers via affidavit that he was not present when the alleged contract was signed and Defendant testified that no person witnessed the actual signing of the alleged contract except Defendant and Perches, Sr., who lives in El Paso and who Defendant does not contend will be unavailable to her in this forum. Hence, the necessity of Villarreal's testimony is not apparent and Defendant, once again, fails to specify how Villarreal is needed as a witness for Defendant. Plaintiffs, by contrast, through their January 31, 2000, First Amended Designation of Potential Witnesses and Expert Witnesses, name twenty-three potential witnesses who live in the United States.[5] Of a total of thirty-two potential witnesses, twenty-one live in El Paso, one in Austin, Texas, and one in San Diego, California. Only two of those named individuals live in Mexico. The remaining seven named witnesses are custodians of record for each of the seven plaintiff corporations.[6] Thus, the Court finds that this factor weighs against dismissal.

---

**4.** Again, Defendant goes too far in characterizing the validity of this alleged contract as the "crux" of this cause. The Court merely entertains her contentions related to such contract because Defendant's Motion fails in spite of the mischaracterization.

**5.** On April 17, 2000, Plaintiffs filed a "Second Amended Designation of Potential Witnesses and Expert Witnesses," which somewhat modifies the number of witnesses located in Mexico that Plaintiff might call. However, with respect to the instant motion, the Court examines the facts as they stood when Defendant filed her Motion. *See Air Crash*, 821 F.2d at 1166.

**6.** To be fair, Defendant does list some nineteen persons that she states reside in Mexico and "have knowledge of relevant facts to the underlying dispute." Unfortunately with the

## 2. Availability of compulsory process and costs of witness attendance

Here, Defendant states without elaboration that "the cost of attaining the presence of unwilling witnesses will be lower in Mexico than the United States." However, the inquiry looks at "the costs of obtaining attendance of *willing* " witnesses, not the unwilling. *See Baris*, 932 F.2d at 1550. In other words, what are the costs of transporting Defendant's witnesses to this Court versus transporting Plaintiffs' witnesses to the forum in Mexico? Although neither party addresses this issue, costs are likely not significantly different between the two fora, given the close proximity of El Paso to Juarez.[7] Finally, although Defendant astutely points out that "[t]his Court does not have subpoena power in Mexico," a Mexico court does not have subpoena power over Plaintiffs' witnesses in this country either. Hence, because the number of witnesses each party names is relatively balanced, the availability of compulsory process is a non-factor here because it does not show that trial would be more convenient in Mexico.

## 3. Practical trial considerations

■ Here, the Court does not find Defendant's contentions persuasive. First, Defendant states without elaboration that "all documents are voluminous and are in Spanish." Plaintiffs contend that most documents are in English, as the only truly relevant documents are those that relate to Defendant's alleged movement of funds between United States financial institutions. At the very least, there are some documents in either language.

Second, even assuming some documents—or even testimony—relating to the alleged contract is relevant and available only in Spanish, because Defendant fails to define "voluminous," the Court cannot give significant weight to her argument in this respect. At this point, the Court is aware of only one document, the alleged contract, which requires translation. Moreover, the fact that some individual witnesses may require Spanish interpreters is wholly unpersuasive, as this Court works around such language limitations every day with minimal inconvenience to the Court and parties. The expense of hiring an interpreter in this matter is not only shared by the Parties, but merely would be reversed—i.e. translating from English to Spanish—if this case were tried in Mexico.

■ Next, Defendant contends that, because "[a]ll parties recognize that Mexic[o's] law will control this case" and "[t]his Court is not trained in, nor [*sic* ] has access to, Mexic[o's] jurisprudence and court decisions," the effectiveness of a trial in this Court will be limited by a battle of opposing expert witnesses opining on Mexico's laws. First, this factor examines the relative convenience to the Parties, not the Court. Moreover, again, this case is not solely about the alleged contract Defendant holds up as giving her a right to the money she allegedly took from Plaintiffs. Although the need for experts on Mexico's laws could be eliminated or reduced if trial were to take place in Mexico, that simply would create a need to hire experts on the laws of the United States. Indeed, the need for experts to testify about Mexico's contract law relates only to Defendant's affirmative defense, and is secondary if at all relevant. Quite frankly, although a trial involving foreign law is not ideal, the Court is not hamstrung by limited application of foreign laws and jurisprudence. Hence, this factor does not weigh in Defendant's favor.

■ Finally, Plaintiffs contend that Defendant's Motion is untimely—an aspect

---

exception of Villarreal, she does not describe the "knowledge" each witness has or its relevance. Hence, the Court can give little weight to such designations.

7. The Court assumes that any case in Mexico would be brought in Ciudad Juarez, where Plaintiffs' businesses are located and where Defendant filed another lawsuit in January 2000. To the extent this assumption misses the mark, thereby affecting the relative conveniences of the Parties, it is Defendant's failure to enlighten the Court which is to blame.

of the practical trial considerations. *See Air Crash*, 821 F.2d at 1165 n. 30 ("We believe the timeliness of the motion is one of the private 'practical problems'. . . ."). A motion to dismiss for forum non conveniens must be filed "within a reasonable time after the facts or circumstances which serve as the basis for the motion have developed and become known or reasonably knowable to the Defendant." *Id.* at 1165. "[A] defendant's dilatoriness promotes and allows the very incurrence of costs and inconvenience the doctrine is meant to relieve." *Id.* Here, Defendant waited some seven months before filing her motion. Because civil cases in this Court are set for trial six months from the entry of a scheduling order, a seven-month delay in filing such a motion, without good reason, is inexcusable. Defendant does not point out any reason for her delay and the entire motion appears to be based on facts already known to or reasonably knowable by Defendant at the time this cause was commenced—i.e., that she allegedly entered into a contract in Mexico in 1994 controlled by the law of Mexico and that the witnesses and documents applicable to that contract are in Mexico. Moreover, Plaintiffs point out that Defendant's delay caused Plaintiffs to spend significant amounts of money on discovery relevant only if this cause proceeds here. While the Court agrees with Plaintiffs that Defendant's delay is prejudicial to Plaintiffs, the Court also notes that such a fact should only "weigh heavily against the granting of the motion" and not wholly preclude dismissal. *Id.*

In sum, Defendant has not shown that the practical trial considerations weigh in favor of dismissal.

### 4. Enforceability of judgment

■ With respect to enforceability of any judgment, Defendant states only that Plaintiffs can enforce any judgment in the United States pursuant to the Uniform Foreign Country Money–Judgment Recognition Act. At this juncture, there is no indication that Plaintiffs would have difficulty enforcing any judgment obtained in

Mexico against Defendant. Hence, this factor helps Defendant slightly.

On balance, then, the Court finds that the private interest factors do not weigh in favor of trial in Mexico. Of those factors, only one, enforceability, weighs in favor of dismissal. Hence, Defendant has not met her burden as to this prong of the test.

### C. Public Interest Factors

■ Where balancing the private interest factors does not clearly point to dismissal, the Court must also balance the public interest factors. *See Air Crash*, 821 F.2d at 1165–66. The public interests to consider are as follows:

[1] the administrative difficulties flowing from court congestion; [2] the local interest in having localized controversies resolved at home; [3] the intent in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; [4] the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and [5] the unfairness of burdening citizens in an unrelated forum with jury duty.

*Baris*, 932 F.2d at 1551 (quoting *Air Crash*, 821 F.2d at 1162–63).

For the reasons set forth below, the Court concludes that the public interest factors do not weigh in favor of dismissal. As the Court repeatedly points out, many of Defendant's arguments are framed from her skewed perception that this case is only about the alleged contract and, in that light, fall far short of the required burden of persuasion.

### 1. The Court's administrative difficulties

■ The Court must first consider its own docket and any "[a]dministrative difficulties [which] follow for courts when litigation is piled up in congested centers instead of being handled at its origin." *Air Crash*, 821 F.2d at 1158 (internal quotation marks omitted) (quoting *Sibaja v.*

*Dow Chem. Co.,* 757 F.2d 1215, 1218 (11th Cir.1985)). Here, although a trial in this matter will theoretically burden the Court's already crowded docket, the Court is amiss to give this factor undue weight. Defendant offers no evidence to support her bald contention that "this Court suffers from a severely congested docket not experienced by the Mexic[o] Courts." While this Court does have a crowded docket, Defendant's description of the alternative is not sufficiently detailed to permit the Court to make an informed comparison or balance.

### 2. Interest of the forum in the outcome

■■ Next, the Court must compare the interests of the United States/Texas and Mexico in presiding over this controversy. *See, e.g., Kempe,* 876 F.2d at 1146. Here, Defendant claims that the United States and Texas have no interest in adjudicating a dispute between Mexican corporations and a Mexican citizen. To the contrary, Mexico has only a small interest in the outcome of this case. Even if the alleged contract is a significant portion of the controversy, the United States and Texas have very strong interests in adjudicating Plaintiffs' contentions that Defendant violated Texas laws by using instrumentalities of United States commerce—the aforementioned financial institutions—to take Plaintiffs' money. To reiterate, the "crux" of the lawsuit may be about Plaintiffs' claims for conversion, fraud, statutory fraud and breach of fiduciary duty, and for accounting and constructive trust. Mexico has no apparent interest in resolving such claims, especially when those claims originate under Texas law, based on events taking place in Texas. Consequently, there is a strong local interest in having these matters adjudicated in this forum rather than Mexico, and Mexico's interest is not significant.

### 3. Familiarity with controlling law

■■ Third, the Court must examine the controlling law and the Court's familiarity with that law. *See Gulf Oil Corp. v.*

*Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Contrary to Defendant's contention, the Parties do not "agree that Mexic[o's] law controls this case." Although some law of Mexico perhaps may be involved in determining the validity and construction of the alleged contract, Defendant erroneously extrapolates from that possibility that the entire case will be decided solely under the laws of Mexico. To the contrary, because Plaintiffs allege causes of action under the common law of Texas, Texas law thereby will apply at some point, if not control the entire adjudication. Defendant's contention that Plaintiffs "concede that Mexico's law applies to this case" simply because Plaintiffs retained an expert witness on the laws of Mexico is simply incorrect, especially since Defendant alleges that the contract gives her an affirmative defense to Plaintiffs' claims. Hence, because this Court is familiar with Texas law and Texas law likely will dominate in this case, the Court finds that this factor does not weigh in Defendant's favor. Hence, this factor does not favor dismissal.

### 4. Avoidance of conflicts of law or application of foreign law

■■ Fourth, "[t]he forum non conveniens doctrine is designed in part to help courts avoid conducting complex exercises in comparative law." *Air Crash,* 821 F.2d at 1158 (internal quotation marks omitted) (quoting *Sibaja,* 757 F.2d at 1218 (11th Cir.1985)). Here, although Defendant repeatedly points out that this Court has no special training or understanding of Mexico's laws, the Court is convinced that such a limitation is not significant. For example Defendant attaches an Exhibit "C" to the instant motion, which is the affidavit of Roberto Calvo Ponton, a Mexican attorney, summarizing the law applicable to the alleged contract. After a brief review of that affidavit, the Court is confident that such explanations of the applicable law of Mexico, if any, will suffice to avoid unnecessary problems with the application of Mexico's laws. Because "foreign law" will

 regardless of the forum—Mexico's laws in this forum or Texas law in Mexico—application of "foreign law" is unavoidable. Accordingly, this factor does not weigh in Defendant's favor.

### 5. Burden of jury duty

 Finally, "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Air Crash*, 821 F.2d at 1158 (internal quotation marks omitted) (quoting *Sibaja*, 757 F.2d at 1218). In this respect, Defendant presents no evidence. Plaintiffs, on the other hand, point out that both Defendant and Perches, Sr.—Plaintiffs' majority stockholder and "representative"—are long-standing permanent residents of the United States and El Paso. Hence, these Parties are members of the community; they live here; they spend money here; and they may someday serve as jurors in this community. Consequently, the Court finds that this forum is not unrelated to the controversy, the Parties are not unrelated to this forum and it is not wholly unfair for the Parties to ask this community to serve as jurors. Hence, this factor does not weigh in Defendant's favor either.

In sum, no one public interest factor weighs in favor of dismissal, much less the "balance" of those factors. Consequently, the Court finds that the public interest factors favor denying Defendant's motion. Accordingly, because the private interest factors also weigh against dismissal, the Court is of the opinion that Defendant's Motion to Dismiss for Forum Non Conveniens should be denied.

Accordingly, **IT IS HEREBY OR-DERED** that Defendant Teresa Kraft's Motion to Dismiss for Forum Non Conveniens is **DENIED.**