

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ALEJANDRO DIAZ, | § | No. 08-21-00202-CV |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law No. 3 |
| LUIS AURELIO TODD, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2017DCV4425) |

## MEMORANDUM OPINION

This appeal—the second go-around for our court—arises out of the trial court's dismissal of a case for forum non conveniens. Appellant Alejandro Diaz sued Appellee Luis Aurelio Todd over a business dispute involving a medical clinic in Juarez, Mexico. Todd moved to dismiss the case under the equitable doctrine of forum non conveniens, which the trial court granted. In the first appeal from that decision, we reversed based on a question raised by the wording of fact findings and conclusions of law as to a key component of the forum non conveniens doctrine. *Diaz v. Todd*, 618 S.W.3d 798, 807 (Tex.App.--El Paso 2020, no pet.). We also raised the possibility that the trial court had devalued Diaz's right to select the forum of his choice based on his immigration status. *Id*. at 808. On remand, the parties addressed those issues with the trial court,

which then entered amended findings and conclusions, and again dismissed the case. We now affirm the trial court's order dismissing the case for forum non conveniens.

## I. PROCEDURAL BACKGROUND[1]

This dispute concerns a Mexican business that performed immigration focused medical examinations for persons seeking to immigrate to the United States. Todd and Diaz first worked together in an entity called Familia Servicios Medicos de la Frontera S.A. de C.V. (Medicos de la Frontera), in which Todd had an ownership interest. After Diaz resigned his position at Medicos de la Frontera in 2013, he began discussing with Todd creating their own business to provide the same kind of services. Eventually, the two agreed to form a Texas partnership that would create a Mexican corporation to operate the business in Mexico. As part of the agreement, Todd was to give up his interest in Medicos de la Frontera, which would have been a competitor with their new venture.

Under these plans, Diaz and Todd formed two Mexican corporations, Medicos de Visas S. de R.L. de C.V. (Medicos de Visas) and Examenes Para Visas, S.C. (Examenes Para Visas). Both companies operated exclusively in Mexico, and neither owned property, performed examinations, nor conducted business within the United States. Diaz later claimed that Todd sabotaged the businesses after the U.S. Consulate and the Centers for Disease Control (CDC) terminated their endorsement of the businesses due to irregularities in the companies' vaccine storage practices. Diaz further alleged that Todd never sold his ownership interest Medicos de la Frontera and that members of his family had pressured him to sabotage Medicos de Visas.

---

[1] We set out a more complete factual background of the case in our previous opinion. *See Diaz v. Todd*, 618 S.W.3d 798, 802-03 (Tex.App.--El Paso 2020, no pet.). There is no need to repeat that here.

At the time of the first forum non conveniens hearing, Diaz's live petition asserted claims for: (1) breach of fiduciary duty under the Texas Business Organization Code, or through a confidential relationship; (2) common law and statutory fraud; (3) tortious interference with prospective business relationship; (4); breach of a fiduciary duty created under Mexican law; and (5) piercing the veil of a shared company to obtain relief from Todd directly. Todd moved to dismiss the case under the doctrine of forum non conveniens, contending that all the events, witnesses, and documents were in Mexico, and thus Mexico would be a more appropriate forum in which to litigate the case. Diaz responded that the controlling factors favored Texas as his choice of forum. Following an evidentiary hearing, the trial court granted Todd's motion to dismiss and Diaz appealed.

In his first appeal, Diaz argued that the trial court abused its discretion by granting the motion, primarily contending that the court: (1) failed to apply the correct legal standard in deciding the motion; (2) abused its discretion in making findings on the availability of an alternate forum, the public and private factors favoring a Texas or Mexico forum, and how it substantively balanced those interests; and (3) procedurally erred in limiting discovery. We reversed the trial court's order because it was unclear whether the trial court had made the quintessential finding that several public and private factors "strongly" favored dismissal as balanced against Diaz's choice of forum. *Diaz*, 618 S.W.3d at 810-11. We also questioned whether the trial court properly valued Diaz's choice of forum based on his immigration status and his choice to base the business in Mexico, given the trial court's citation to a United States District Court opinion from Southern District of Texas that took one position on those matters. *Id.* at 807-08, *declining to follow DTEX, LLC v. BBVA Bancomer, S.A.*, 512 F. Supp. 2d 1012, 1020 (S.D. Tex. 2007). Instead, we endorsed the view of a Western District opinion that takes a contrary view. *Id.*, *citing Tellez v. Madrigal*,

3

223 F. Supp. 3d 626, 640 (W.D. Tex. 2016). We remanded the case for the trial court to consider Diaz's choice of forum with the appropriate weight Diaz's choice of forum was due. *Id.* at 810-11. We did not reach Diaz's remaining arguments. *Id.* at 811.

A concurring Justice emphasized that "our opinion should not be construed as necessarily rebuking the trial court's conclusion" but merely its explicit reliance on the *DTEX* decision. *Diaz*, 618 S.W.3d at 811–12 (Palafox, J., concurring). On remand, the concurrence expected the trial court to perform the forum non conveniens inquiry as guided by the rationale in *Tellez v. Madrigal*. *Id.*

After our mandate issued, Todd filed a motion titled "Motion for Reentry of Order Granting Defendant's Motion to Dismiss, and for Amended Findings of Fact and Conclusion of Law." Diaz then noticed Todd's deposition which prompted Todd to file a motion for protective order seeking to quash the deposition until after the court heard the motion for reentry of the dismissal. Diaz also filed an amended petition that dropped all but his fraud claim against Todd. And Diaz filed a motion to compel the production of documents, and a "Motion for Rehearing and Response to [Todd's] Motion for Re-entry of Order."

The trial court heard these matters in one omnibus hearing. Both parties presented argument during the hearing, but neither party presented any new evidence. Following the hearing, the court entered Amended Findings of Fact and Conclusions of law, along with another order granting Todd's motion to dismiss for forum non conveniens. This appeal follows.

Diaz challenges the trial court's order dismissing the case in seven issues, arguing that: (1) the trial court failed to conduct the proper forum non conveniens analysis that complied with this Court's previous opinion; (2) dismissal was inappropriate because Mexico was not an "available" forum; (3) the trial court should have considered changed circumstances and erred by ignoring

4

Diaz's amended petition; (4) Diaz was denied a fair opportunity to conduct discovery; (5) the private and public interest factors in the forum non conveniens analysis did not weigh in favor of dismissal; and (6) the trial court abused its discretion by concluding that Mexican law applies to the Diaz's claims. We take Diaz's issues out of order and address the issues together where possible.

## II. FORUM NON CONVENIENS

### A. Standard of Review

The determination of whether to grant or deny a motion to dismiss based on forum non conveniens is committed to the sound discretion of the trial court. *Quixtar Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 31 (Tex. 2010) (per curiam), *citing Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981); *Alvarez Gottwald v. Dominguez de Cano*, 568 S.W.3d 241, 245 (Tex.App.--El Paso 2019, no pet.). Thus, we reverse a trial court's dismissal under the doctrine of forum non conveniens only when there has been a clear abuse of discretion. *Quixtar*, 315 S.W.3d at 31.

A trial court commits an abuse of discretion when it acts without reference to any guiding rules and principles, and when no evidence supports its ruling. *Id.*, *citing Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *In re Elamex, S.A. de C.V.*, 367 S.W.3d 879, 885 (Tex.App.--El Paso, 2012, no pet.). When reviewing the trial court's decision for an abuse of discretion, we may not substitute our judgment for that of the trial court on resolution of factual issues or matters committed to the trial court's discretion. *See Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992); *see also Downer*, 701 S.W.2d at 242. We are less deferential when reviewing the trial court's determination of the legal principles controlling its ruling. *In re Elamex*, 367 S.W.3d at 896. A trial court has no discretion in determining what the law is or applying the law to the facts, even when the law is unsettled. *Id.*, *citing In re Prudential Insurance Co. of America*, 148

S.W.3d 124, 135 (Tex. 2004). A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Walker*, 827 S.W.2d at 840.

**B. Forum Non Conveniens**

The doctrine of forum non conveniens "den[ies] audience to a case on the merits, [requiring instead] that the merits should be adjudicated elsewhere." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007) (internal quotes and citations omitted). A trial court should apply the doctrine of forum non conveniens when it determines that, for the convenience of the parties and witnesses and in the interest of justice, the action should be instituted in another forum. *Exxon Corp. v. Choo*, 881 S.W.2d 301, 302 n.2 (Tex. 1994). The doctrine properly applies when the court might otherwise have personal jurisdiction over the parties, but the action lacks a significant connection to the forum. *In re Bridgestone Americas Tire Operations, LLC*, 459 S.W.3d 565, 568 (Tex. 2015). For Texas wrongful death and survival claims, the analysis is dictated by statute. *See* TEX.CIV.PRAC.& REM.CODE ANN. § 71.051 (setting out specific test for wrongful death and survival claims); *In re Mahindra, USA Inc.*, 549 S.W.3d 541, 544 (Tex. 2018) (distinguishing statutory and common law requirements). But here, the forum non conveniens analysis is dictated by the common law. And Texas courts have routinely looked to a well-developed body of federal law to guide forum non conveniens disputes. *See Quixtar*, 315 S.W.3d at 32 ("[W]e regularly consider United States Supreme Court precedent in both our common law and statutory forum non conveniens cases."); *In re Omega Protein, Inc.*, 288 S.W.3d 17, 20 (Tex.App.--Houston [1st Dist.] 2009, orig. proceeding) (noting same).

At its core, forum non conveniens is a balancing act. Courts balance the plaintiff's choice of forum against how a set of public and private interests might "strongly favor" an available alternate forum. *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983) ("[A]

6

forum non conveniens dismissal must be based on the finding that, when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate and available alternative forum."). Stated otherwise, the plaintiff's choice of forum is entitled to deference, and a defendant seeking forum non conveniens dismissal "bears a heavy burden" to overcome that chosen forum. *Quixtar*, 315 S.W.3d at 31 *citing Sinochem*, 549 U.S. at 430; *see also Piper Aircraft*, 454 U.S. at 255-56 ("[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum."). This strong presumption, however, applies only for a resident of a State suing in that same State. A non-resident plaintiff's choice to sue in Texas enjoys "substantially less deference" than it would if the plaintiff had been a resident of Texas. *Quixtar*, 315 S.W.3d at 33.

There is of course nothing to balance if there is no alternative forum that is both adequate and available. *See In re Elamex*, 367 S.W.3d at 887 ("[b]ecause the common law doctrine of *forum non conveniens* presumes that at least two forums are available to a plaintiff, a trial court must *first* determine whether an alternative forum exists, inquiring whether another forum is 'available' and 'adequate' ") (emphasis added); *Alvarez Gottwald*, 568 S.W.3d at 249 ("[U]nder common law *forum non conveniens* analysis, whether a forum is both available and adequate is a threshold question to be answered before a court can weigh the public and private factors considered in a common law *forum non conveniens* analysis."). If such an alternate forum exists, the court then looks to the relevant public and private interest factors, which we set forth below. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947).

7

## C. The Trial Court Conducted an Appropriate Analysis

In his first issue, Diaz argues that the trial court failed to conduct a forum non conveniens analysis that comports with our instructions in the first appeal. He contends that the trial court merely "re-enter[ed]" amended findings that did not comply with this Court's mandate because its findings were not "guided by the analysis" in *Tellez v. Madrigal*, 223 F. Supp. 3d 626, 640 (W.D. Tex. 2016).

In the first appeal, we affirmed the trial court's conclusion that Mexico was an adequate and available forum, and we rejected Diaz's argument that a court is precluded from dismissing a case where both parties are Texas residents. *Diaz*, 618 S.W.3d at 806. We also found that the trial court had correctly identified the public and private factors. *Id.* at 807. That said, we remanded the case due to the uncertainty of "whether the appropriate test was applied in the balancing process", and we directed the trial court to utilize the standard that the private and public interest factors need to weigh "strongly" in favor of dismissal. *Id.* at 810-11. And as we explain above, we raised the issue of how Diaz's choice of forum should be weighed, given our endorsement of the rationale of a Western District case (*Tellez v. Madrigal* ) over a Southern District opinion (*DTEX*). *Id.* at 810. In sum, we reversed "solely out of a concern that the plaintiff's choice of forum may not have been accorded the weight it was due." *Id.* at 811. Our judgment and mandate reversed the trial court's initial order and remanded the case "for further proceedings not inconsistent with this [Court's] opinion." *Id.*

After we remanded the case, the trial court held another hearing where this Court's opinion was discussed in detail. Each side addressed its view of how our opinion impacted the balance of Diaz's choice of forum and the public/private factors. Todd's counsel principally argued that the trial court previously reached the correct decision, applying the correct test, and at most failed to

8

properly wordsmith its' findings. Diaz's counsel argued that the *Tellez v. Madrigal* opinion provided the correct path for balancing the interests, and drew parallels between the facts of that case and this one. The trial court specifically asked Todd's counsel to address the *Tellez v. Madrigal* analysis.

At the conclusion of the hearing, the trial court asked each side to provide an order with the relief they requested and took the matter under advisement. As we explain below, the trial court later amended its findings and conclusions to incorporate the "strongly favor dismissal" standard. The amended findings acknowledge the *Tellez v. Madrigal* case, and that even a resident plaintiff's choice of forum is entitled to a strong presumption of convenience. Because the trial court entered amended findings and conclusions that satisfied the concerns raised in our opinion from the first appeal, we reject Diaz's contention that the court failed to comply with our directive.

Diaz's Issue One is overruled.

### D.   Availability of an Alternate Forum

Diaz next complains about the portion of the forum non conveniens analysis that we previously decided. In our first opinion, we held that Mexico is an adequate and available forum. *Diaz*, 618 S.W.3d at 806. But in this appeal, Diaz raises the new argument that his claim is unavailable in Mexico because it is barred by the statute of limitations under Mexican law. Diaz posits that under "the Civil Code for the State of Chihuahua, Article 1163, the statute of limitations for this case is two years from September 2016," and because the trial court had dismissed the case on October 6, 2021, more than five years later, his claims are barred in Mexico and that forum is unavailable. Diaz also argues that the trial court's findings are deficient because they are silent on the statute of limitations issue. Todd responds that his Mexican law expert, Alejandro Toulet,

9

testified that the relevant statute of limitations for Diaz's claims is ten years, and thus his claims are not barred, leaving Mexico as an available forum.

Diaz made this same argument in the trial court before the first order dismissing the case. Thus, Diaz could have raised the issue in his first appeal. Nor did Diaz make this argument in his pleadings or during the hearing in the trial court after we remanded the case. The proper time to have raised the statute of limitations issue was in the first appeal, not after this Court remanded the case to address a different issue. This claim is therefore waived. *See Jefferson v. GEICO Cnty. Mut. Ins. Co.*, No. 05-20-00067-CV, 2022 WL 3908547, at *4-5 (Tex.App.--Dallas Aug. 31, 2022, no pet.) (mem. op.) (failure to appeal a ruling in an initial appeal precludes an appellant from seeking review of the ruling in a subsequent appeal after remand).

Diaz's Issue Two is overruled.

**E. Trial court's consideration of Diaz's live petition**

In Issue Three, Diaz argues that the trial court's findings did not reflect his amended petition that alleged "changed circumstances" and "new evidence" discovered while the first appeal was pending. The amended petition also dropped parties and claims that are addressed as a part of the balance of public/private factors. We reject this contention for two reasons. First, Diaz did not raise the fact of, or implications from, the amended petition at the hearing following remand. That is, at the hearing, no argument was raised that the petition was amended, or that the amendments altered the balance of public/private factors. It is hard to fault the trial court's exercise of its discretion based on an argument that was never raised to it. Having never first made the argument to the trial court, we decline to consider it. *See* TEX. R. APP. P. 33.1.

Second, Diaz's appellate brief claims that "new evidence came to light while this case was on appeal which shows that Todd filed US tax returns indicating that he retained an interest in his

10

family's business, contrary to his testimony under oath." The fourth amended petition also alleges that Todd moved back to El Paso from Edinburg after we decided the first appeal and now resides in El Paso. But Diaz does not direct our attention to any new evidence other than an allegation in his amended petition. Because pleadings do not constitute evidence, we disregard Diaz's assertion that new evidence was presented to the trial court after we remanded the case. *See In re Elamex, S.A. de C.V.*, 367 S.W.3d 891, 898 (Tex.App.--El Paso 2012, orig. proceeding [mand. denied]) (allegations in pleadings are not evidence, even if sworn or verified). Nor are we convinced that any of these matters change the balance. Whether Todd lives in Edinburg or El Paso might be relevant to venue, but not whether litigation should occur in Texas or Mexico. That claims were dropped might affect the complexity of the jury charge, but not necessarily the number of documents or witnesses need to prove a fraud claim, and more particularly the damages arising from the loss of the Mexican based business.

Diaz's Issue Three is overruled.

**F. Private and public interest factors**

Next, we determine the matter for which we remanded the case: whether the private and public interest factors strongly favor dismissal. *See Diaz*, 618 S.W.3d at 810-11. We consider each set of factors in turn.

*1. Private interest factors*

The private considerations include: (1) the "relative ease of access to sources of proof"; (2) the "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses"; (3) the "possibility of view of premises, if view would be appropriate to the action"; (4) the "enforceability of a judgment" once obtained; and (5) "all other

practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 805, *citing Gulf Oil Corp.*, 330 U.S. at 508. We discuss each factor in turn.

### a. Ease of access to sources of proof

Diaz argues that although some documents are in Mexico, they "are likely of little importance . . . to the issue in dispute in this case (whether Todd sold his interest in Servicios Medicos)." And he posits that the documents of Medicos de Visas are irrelevant, easily obtainable, and easily translated from Spanish to English. He also asserts that the relevant documents are in the possession of Todd's siblings and former partners who are residents of Texas.

Although Todd testified that he believed that his siblings had copies of the sale documents, the sale of his interest in Servicios Medicos occurred in Ciudad Juarez, Mexico, and the sale documentation was written in Spanish and located in Mexico. In addition, the trial court found that "the business and accounting records of Medicos de Visas and Examenes Para Visas are located in Mexico and are in Spanish," along with the documents from the accounting firm engaged by Medicos de Visas, all which would require translation into English. This finding is supported by the businesses' documents admitted into evidence, which are all written in Spanish and would require additional expense to translate into English. Based on Todd's testimony, the trial court found that "[m]ost, if not all" the former employees of Medicos de Visas who would be necessary witnesses in the case are citizens in and residents of Mexico. Todd also testified that testimony establishing the sale of his ownership interest could be derived only from people who live in Mexico. Because a significant portion of the relevant evidence and witnesses are in Mexico and would be difficult, if not impossible, to obtain in Texas, this factor favors the motion to dismiss.

## b. Availability of compulsory process for government witnesses

During the hearing, Todd testified that certain employees of the United States Department of State and the Centers for Disease Control would be witnesses. But the trial court found that there was "[n]o evidence" presented as to the current business or home addresses of those witnesses. Thus, this factor weighs neither in favor nor against the motion to dismiss.

## c. Access to Texas witnesses if the case was tried in Mexico

Diaz argues that there are twenty-four "key" witnesses in the United States whose testimony would be necessary at trial. But he does not point to any evidence in support of that contention other than allegations in his filed response to Todd's motion to dismiss. Again, because pleadings are not evidence, we reject his contention that most of the critical witnesses are in the United States. *See In re Elamex*, 367 S.W.3d at 898.

In contrast, based on Todd's testimony, the trial court found that the witnesses in the case, including his siblings and Dr. Anibal Acosta (one of the owners of Servicios Medicos), were potential witnesses who would be available to testify in Mexico. And unlike courts in Mexico, the trial court here does not possess compulsory process to compel attendance of witnesses who are in Mexico. *See Lopez v. Fluor Corp.*, No. 05-19-00970-CV, 2022 WL 1222823, at *9 (Tex.App.- - Dallas Apr. 26, 2022, no pet.) (mem. op.) ("[C]ompared to the court(s) in Mexico, the [Texas] trial court does not enjoy compulsory process to compel attendance of witnesses who are in Mexico."), *citing* TEX.R.CIV.P. 176.3. On the other hand, if a Mexican court issues a mandate, writ, or commission requiring an oral or written deposition of a witness in Texas, the witness may be compelled to appear in the same manner and process used for taking testimony in a proceeding in Texas. *See* TEX.R.CIV.P. 201.2. This possibility was supported by Todd's expert in Mexican law, Alejandro Toulet, who testified that it would be possible under Mexican law to

13

obtain documents and testimony from United States citizens if the case was tried in Mexico. This is possible because both the United States and Mexico are parties to the Hague Service Convention and the Hague Evidence Convention, which the trial court concluded "provide a vehicle for obtaining evidence and service of process in both countries."

As such, there is evidence supporting the trial court's conclusion that because "[m]ost of the witnesses are in Mexico, . . . their attendance cannot be compelled at trial in El Paso, Texas," and that "maintaining this case in [Texas] will result in additional expenses for all parties involved." This factor favors the motion to dismiss.

### d. View of the premises

The trial court also concluded that because the inspection of the properties or facilities belonging to Medicos de Visas or Examenes Para Visas could be conducted only in Mexico, this factor also strongly favors dismissal. It is undisputed between the parties that the companies owned the relevant properties in Mexico and that their premises were located there. Thus, this factor also favors dismissal.

### e. Other practical factors

Based on statements from Todd's attorney, which he contends is a judicial admission, Diaz argues that he would be more limited to certain pretrial discovery procedures if the case was tried in Mexico. At the hearing, Todd's attorney acknowledged that discovery in Mexico is "extremely limited: there's no question about that, Your Honor." And although Toulet testified that the discovery process in Mexico is "a lot more formal" than it is in Texas, he stated that there are discovery measures available in Mexico. Regardless, as we have already stated, the fact that another forum has differences in procedural or substantive law "do not render the alternate forum inadequate so long as they do not deprive a party of all remedies or treat a party unfairly." *Diaz*,

14

618 S.W.3d at 806. The Supreme Court has also rejected the argument that another forum's less advantageous discovery rules would support dismissal based on forum non conveniens because a court "could not dismiss the case on grounds of *forum non conveniens* where dismissal might lead to an unfavorable change in law," resulting in a flow of litigation into the United States that would "further congest already crowded courts." *See Piper Aircraft*, 454 U.S. at 251-52 & n.18. Because there is no sign that any differences in discovery would deprive Diaz of his available remedies or treat him unfairly, and such differences would not weigh against dismissal. *See Diaz*, 618 S.W.3d at 806.

### f. Conclusion

In sum, the evidence supports the trial court's conclusion that the balance of the private factors weigh strongly in favor of dismissal. This litigation concerns Mexican business entities and disputes that occurred almost entirely in Mexico. The record establishes that most of the relevant witnesses, evidence, and properties are in Mexico, and that forum provides greater access to sources of proof than Texas. The witnesses in Mexico are more amenable to jurisdiction and service of process in Mexico. Moreover, because of the necessity for the relevant documents to be translated from Spanish to English, it will be less expensive to litigate the case in Mexico. For these reasons, we conclude that the trial court did not abuse its discretion by finding that the private interest factors weigh strongly in favor of dismissal for forum non conveniens. *See Lopez*, 2022 WL 1222823, at *9 (holding that the private interest factors warranted dismissal where most of the witnesses and involved entities were in Mexico, the cost of litigation would be lower there, and Mexico would provide greater access to sources of proof than Texas).

*2. Public interest factors*

The public considerations include: (1) "[a]dministrative difficulties . . . for courts when litigation is piled up in congested centers instead of being handled at its origin"; (2) the burden of "[j]ury duty . . . that ought not to be imposed upon the people of a community which has no relation to the litigation"; (3) "local interest in having localized controversies decided at home"; and (4) avoiding conflicts of law issues. *Diaz*, 618 S.W.3d at 805, *citing Gulf Oil Corp.*, 330 U.S. at 508- 09. We address each factor in turn.

a. Local court congestion

The trial court took judicial notice of the fact that there was heavy congestion generally in the dockets of El Paso courts, and particularly for County Court at Law Number Three given that a block of cases had been transferred to it from another county court. Diaz offers no evidence to contradict the trial court's conclusion, but argues that there was no evidence supporting the trial court's finding that El Paso courts are more congested than Mexican courts.

In *Tellez v. Madrigal*, the district court held that the court-congestion factor weighed against dismissal because there was no information in the record about whether the court's docket is "more or less congested than Mexican court dockets." *Tellez*, 223 F. Supp. 3d at 642, *citing Prevision Integral de Servicios Funerarios, S.A. v. Kraft*, 94 F. Supp. 2d 771, 781 (W.D. Tex. 2000) (noting that the court has been reluctant to attach "undue weight" to this factor when the "[d]efendant's description of the alternative is not sufficiently detailed to permit the Court to make an informed comparison or balance"). Todd points to no evidence establishing whether a Mexican court's docket would be lighter or heavier than County Court at Law Number Three. Because the record does not include a comparison between the two court systems, we find that this factor weighs against dismissal. *See id.*

16

b. Burden on local jurors

This litigation involves a dispute over the formation, operation, and ownership of several Mexican business entities by Diaz and Todd who, despite being Texas residents, are both Mexican citizens. The written agreements and governing documents of the Mexican businesses were entered into in Mexico under Mexican law. And although the businesses had some dealings with United States governmental entities, the businesses operated exclusively in Mexico and all obligations of the parties were performable exclusively in Mexico. Thus, the connection of this litigation to Texas is tenuous at best, and Texas jurors do not have a strong interest in resolving this dispute. Thus, this factor favors dismissal. *See Vinmar Trade Finance, Ltd. v. Utility Trailers de Mexico, S.A. de C.V.*, 336 S.W.3d 664, 679 (Tex.App.--Houston [1st Dist.] 2010, no pet.) ("Although they have an interest, Texas jurors do not have a strong interest in resolving a dispute arising from Mexican business transactions, contracts executed in Mexico, and alleged torts emanating from Mexico . . . .").

c. Local interest in the litigation

As for local interest in the litigation, Diaz argues that because he and Todd are Texas residents, he should have access to a Texas court. It is true that there is some interest in providing a forum for litigation involving at least one Texas resident. *See Quixtar*, 315 S.W.3d at 33 (recognizing that where one party to litigation is a Texas resident, there is "at least some justification for the burden to Texans of providing judicial resources for the dispute"). But the fact that one of the parties is a Texas resident does not necessarily mean that Texas is a more appropriate forum than another location. *See id.* at 35 (upholding dismissal based on forum non conveniens where one of the parties was a Texas resident and rejecting the court of appeals' conclusion that Texas had a more substantial interest in protecting its citizens from a nonresident

17

company's actions, despite the court of appeals' recognition that another forum had a greater interest in seeing that the plaintiff was compensated).

Thus, while Diaz as a Texas resident has an interest in having a local court provided for him, Mexico has the greater interest in resolving the litigation because this lawsuit involves parties, events, and injuries that occurred in Mexico, not Texas. This factor favors dismissal. *See Vinmar Trade Finance*, 336 S.W.3d at 679 (stating that although Texas has an interest in providing a forum to a Texas resident, "this interest is minimal when compared with Mexico's interest in regulating Mexican companies conducting business and allegedly perpetrating fraud within its boundaries," and that "Texas jurors do not have a strong interest in resolving a dispute arising from Mexican business transactions, contracts executed in Mexico, and alleged torts emanating from Mexico"); *Daniels v. State*, 538 S.W.3d 139, 149 (Tex.App.--El Paso 2017, pet. denied) (litigation involving actions committed in New Mexico by New Mexican residents evinced a "localized controversy" that favored dismissal); *A.P. Keller Dev. v. One Jackson Place*, 890 S.W.2d 502, 507 (Tex.App.--El Paso 1994, no writ) (dispute over a contract for the management of a building in Mississippi, which was to be performed in that state, established "a strong relationship between this litigation and the State of Mississippi" that favored dismissal).

### d. Conflicts of law

Finally, the conflicts-of-law factor supports dismissal if the trial court would have to "untangle problems in conflict of laws, and in law foreign to itself." *Piper Aircraft*, 454 U.S. at 251, *quoting Gulf Oil Corp.*, 330 U.S. at 509. And courts have recognized that "[e]ven the possibility that foreign law applies to a dispute is sufficient to warrant dismissal on *forum non conveniens* grounds." *Vinmar Trade Finance*, 336 S.W.3d at 679 (citations omitted).

18

Here, the trial court found that this case "requires the interpretation of complex issues of Mexican corporate law for which Dr. Diaz and Dr. Todd will be required to provide Mexican law expert testimony, translations and interpreters," and that such would incur "significant expenses" if the case was litigated in Texas. The court also found that it "would have to discern the interpretation of Mexican codes, and Mexican jurisprudence, based on the testimony of Mexican law experts," and that based on the testimony of the Mexican law experts during the hearing, a Texas court would have trouble applying Mexican laws applicable to the merits of the case. There is record support for the notion that the trial court would need to apply Mexican law to determine the outcome of this litigation. At the time of first hearing, Diaz's live pleading alleged a direct claim or "derivative proceeding" under Mexican law, specifically Articles 76 and 163 of the "Ley General de Sociedades Mercantiles." He also alleged in his second amended petition a fiduciary duty claim under Mexican law, arguing that "in accordance with the internal affairs doctrine, Mexican law should be applied to the claim for breach of fiduciary duty owed to Medicos de Visas." Diaz himself filed a "Motion for Judicial Notice of Sources for Mexican Law" which included as an attachment approximately sixty pages of Spanish language Mexican statutes with English translations.

Diaz, however, argues in Issue Seven that Todd failed to prove the applicability of Mexican law to his claims, arguing that: (1) there was no evidence of a conflict between Texas and Mexico law; and (2) the court should have conducted a proper choice of law analysis. As to both points, Todd's Mexican law expert testified at the first hearing that there were differences between Texas and Mexico on claims for common law fraud and tortious interference with contract, stating that the Mexican equivalent of a common law fraud claim may be at least partially criminal. Diaz's fourth amended petition dropped the claims that explicitly relied on Mexican law and tortious

19

interference with contract. But even had that been called to the trial court's attention, its effect would not change the outcome. In *Vinmar*, our sister court rejected a similar argument. *Vinmar*, 336 S.W.3d at 679. As here, the plaintiff in that case questioned whether the record showed that choice of law favored dismissal for forum non conveniens. *Id.* The Houston court first noted that under federal law, "[e]ven the possibility that foreign law applies to a dispute is sufficient to warrant dismissal on forum non conveniens grounds." *Id.*, *quoting Warter v. Boston Sec., S.A.,* 380 F. Supp. 2d 1299, 1315 (S.D.Fla. 2004). The Houston court also noted "that the Texas Supreme Court in *Quixtar* appeared critical of the intermediate appellate court's emphasis on the defendant's failure to demonstrate any choice of law issues as a reason to overrule the trial court's dismissal based on forum non conveniens." *Id*., *citing Quixtar,* 315 S.W.3d at 35.

In sum, we do not conclude that the trial court abused its discretion in analyzing the choice of law issue.

*3. Conclusion*

The trial court did not abuse its discretion in finding that the balance of public and private interest factors weighs strongly in favor of dismissal. We thus conclude that the trial court did not err in dismissing the case for forum non conveniens.

Diaz's Issues Five, Six, and Seven are overruled.

## IV. DISCOVERY ISSUE

In his fourth issue, Diaz argues that the trial court abused its discretion by denying him the opportunity to conduct additional discovery related to the forum non conveniens issue. Arguing that Todd had "refused to produce a single document in this case," Diaz moved to compel production of certain documents associated with Servicios Medicos and requested Todd to undergo deposition. Todd responded with a motion for protective order, positing that this Court had not

20

remanded the case to allow the parties to conduct additional discovery on the forum non conveniens issue, but solely on the issue of whether the balance of private and public factors weighed "strongly" in favor of dismissal. Todd also argued that such merits-based discovery was inappropriate while the forum non conveniens issue was pending. The trial court granted Todd's motion for protective order. On appeal, Diaz argues that added discovery was necessary to uncover evidence that surfaced while the first appeal was pending. He claims that the trial court abused its discretion by preventing further discovery.

We review a trial court's discovery rulings, including the grant of a motion for protective order, under the abuse of discretion standard. *Johnson v. Davis*, 178 S.W.3d 230, 243 (Tex.App.--Houston [14th Dist.] 2005, pet. denied). Unlike summary judgment, which is generally a decision on the merits, a motion to dismiss under forum non conveniens "is a non-merits basis for dismissal because it is a determination that the merits of the claims should be decided elsewhere." *Lumenta v. Bell Helicopter Textron, Inc.*, No. 01-14-00207-CV, 2015 WL 5076299, at *13 (Tex.App.--Houston [1st Dist.] 2015, no pet.) (mem. op.). As a result, a motion to dismiss for forum non conveniens does not require a detailed development of the case, but only "enough information to enable the [trial] court to balance the parties' interests." *Id.*, *quoting Piper Aircraft*, 454 U.S. at 258. To that end, a trial court may limit discovery pending resolution of threshold issues, such as forum non conveniens. *Id.*, *citing In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 181 (Tex. 1999) (orig. proceeding); *see Piper Aircraft*, 454 U.S. at 258 (recognizing that "[r]equiring extensive investigation would defeat the purpose" of a forum non conveniens motion to dismiss, and that a defendant must only provide enough information to enable the trial court to balance the parties' interests).

21

The record shows that before our decision in the first appeal, the trial court had allowed discovery on the forum non conveniens issue. Some of the documents that Diaz first requested were merits-related, and the parties entered into a Rule 11 agreement deferring that discovery until after the forum non conveniens motion was decided. Other than reference to a U.S. tax return, Todd does not identify any specific document needed for the balancing test, or how the tax return would materially affect the outcome here.

Following our remand, Diaz sought to depose Todd. But at the earlier evidentiary hearing, Todd testified and faced cross-examination, and thus the trial court could have reasonably concluded that deposing Todd was unnecessary. Because discovery matters are generally committed to the sound discretion of the trial court, and because a trial court need not allow extensive discovery to determine a forum non conveniens issue, we conclude that the trial court did not abuse its discretion by granting the motion for protective order and precluding further discovery.

Diaz's Issue Four is overruled.

## V. CONCLUSION

The trial court's judgment is affirmed.

JEFF ALLEY, Justice

December 21, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.

22